GROUP MEDICAL AND SURGICAL SERVICE, INC. and Group Hospital Service, Inc., d/b/a Blue Cross/Blue Shield of Texas, Appellants,

v.

Daniel LEONG, D.O., Appellee.

No. 08–86–00241–CV.

Court of Appeals of Texas, El Paso.

March 2, 1988.

Rehearing Denied April 6, 1988.

Yvonne K. Puig, Grambling & Mounce, El Paso, for appellants.

Raymond C. Caballero, El Paso, for appellee.

Before OSBORN, C.J., and FULLER and WOODARD, JJ.

## OPINION

OSBORN, Chief Justice.

Based upon a jury verdict, a judgment was entered for Dr. Daniel Leong against Blue Cross/Blue Shield of Texas, which contained findings of negligent conduct, tortious interference with a business and violations of the Texas Insurance Code. We affirm in part, and we reverse and remand for entry of judgment in accordance with this opinion.

Dr. Leong obtained a doctor of osteopathy degree in 1958 and came to El Paso, Texas, the following year. He was associated with another doctor until 1968 and since that time has practiced medicine by himself under the name of Leong & Associates. Beginning in the early 1970s, the Utilization Review Department of Medicaid reviewed services and bills of Dr. Leong and concluded that the charges he had made exceeded the norm established by his peer group, and in 1975 sought repayment of $13,414.31 under Title XVIII and $23,652.40 under Title XIX. The doctor denied that he had provided unnecessary services or made any excessive charges. Much correspondence was exchanged between the parties and their attorneys without any resolution of the problem. In 1977 and 1978, Blue Cross/Blue Shield of Texas as administrator of the Medicare–Medicaid programs initiated a procedure to collect the overpayments claimed to be owed by Dr. Leong. For a period during those two years, all checks for services rendered by Dr. Leong and billed to Blue Cross/Blue Shield were duly issued and mailed to "Leong, Daniel D.O., 2201 Main Street, Dallas, Texas 75222," which was the Dallas address of Blue Cross/Blue Shield. Copies of Explanation of Benefit Payments were sent to patients to reflect the payments made by Blue Cross/Blue Shield and those copies also reflected payments to the doctor at the Dallas address. In Dallas, the checks were sorted and private payment checks were forwarded to the doctor or his patients, and checks for Medicare–Medicaid services were retained and credited against the amount of overpayment claimed against the doctor. Throughout this period of time, Dr. Leong sought a change of the process and contended that sending information to patients with a Dallas address was interfering with his business and causing a loss of patients because of their belief that he had moved to Dallas.

In February 1979, Dr. Leong filed suit against Blue Cross/Blue Shield and sought a restraining order and injunction to enjoin the continued collection process. A restraining order was issued and the case set for hearing on the issue of a temporary injunction. In March 1979, the Regional Medical Director for the Department of Health, Education and Welfare wrote to Blue Cross/Blue Shield confirming a decision to refund to Dr. Leong the amounts held in suspense as well as the amount previously paid by him as a partial payment. In April 1979, an agreed order was entered in the pending suit reciting that a full refund had been made and the doctor removed from a suspended status. There was no release or order disposing of the claim for damages, and that part of the case was tried in 1986.

The jury found: (1) Blue Cross/Blue Shield (A) wrongfully interfered with the relationship the doctor had with his patients, (B) committed acts of negligence, and (C) committed ten acts or practices which were unfair, misleading or deceptive in the conduct of an insurance business; (2) failed to find the wrongful interference was malicious; (3) that Blue Cross/Blue Shield knowingly committed the acts or practices in the conduct of an insurance business; (4) that the interference and negligent conduct were each a proximate cause of the damages to the doctor; (5) that the

acts found as to the insurance business were a producing cause of damage to the doctor; (6) past damages of $200,000.00; (7) that the manner in which Blue Cross/Blue Shield represented plaintiff's address was a heedless and reckless disregard of the rights of others affected by it; (8) exemplary damages of $400,000.00; (9) failed to find the doctor negligent in failing to take steps to alleviate the problem; (10) that Blue Cross/Blue Shield's negligence was ninety percent and Dr. Leong's ten percent; and (11) that suit was not brought in bad faith or for harassment. The trial court entered judgment for $845,-564.68 plus interest, costs and attorney's fees for an appeal, such sum including $600,000.00 as treble the actual damages, $205,564.68 for prejudgment interest and $40,000.00 for attorney's fees in the trial court. The judgment was based upon the findings as to violations of the Deceptive Trade Practices Act which became actionable under Tex.Ins.Code Ann. art. 21.21, sec. 16(a) (Vernon Supp.1988). The issues as to wrongful interference with a business relationship and negligence became immaterial, but we have addressed some of those issues which could become material if we are in error as to the application of the provisions of the Texas Insurance Code and the Deceptive Trade Practices Act.

The Appellants initially contend Dr. Leong was not the proper party plaintiff and that judgment should have been entered for defendants. Blue Cross/Blue Shield filed a sworn denial that "[p]laintiff, DANIEL LEONG, D.O [sic], is not entitled to recover in the capacity in which he sues." It alleged the damages were sustained by "Leong & Associates." At the hearing on various motions and special exceptions, all counsel and the court assumed "Leong & Associates" to be a professional association. No evidence was developed as to the actual status of "Leong & Associates." Tex.Rev.Civ.Stat.Ann. art. 1528(e), sec. 3(a) (Vernon Supp.1988), specifically excludes doctors of medicine from the provisions of the Texas Professional Corporation Act. Dr. Leong testified that all receipts from his practice were turned over to the corporation and that he owned 100%

of the corporation. The record contains tax returns for Leong & Associates filed on Internal Revenue Service Form 1120 for a corporation. The Texas Business Corporation Act, Tex.Rev.Civ.Stat.Ann. art. 2.01, sec. B(2) (Vernon Supp.1988), provides no corporation may be organized under this Act if its purpose is to engage in an activity which requires a license, and such a license cannot lawfully be granted to a corporation. We assume that "Leong & Associates" is an unincorporated association or joint stock company, since it could not be a professional association or a corporation for profit in this state.

The pleadings in this case all are in the name of the doctor individually. All of his business was conducted as a corporation, according to his testimony and tax returns. His only earnings were a salary from the corporation. Although the sworn denial under Tex.R.Civ.P. 93(2) and various motions for judgment and new trial raised issues as to his capacity, he did not sue in a capacity such as a stockholder, a trustee, guardian, executor or administrator or other recognized capacity other than individually for himself. His suit is to recover damages for himself. He does not seek to recover damages sustained by a corporation.

■ Clearly, individual stockholders have no cause of action to recover damages sustained by a corporation. *Commonwealth of Massachusetts v. Davis*, 140 Tex. 398, 168 S.W.2d 216 (1942). An individual stockholder has no cause of action even if he owns a majority of the stock. *Cullum v. General Motors Acceptance Corporation*, 115 S.W.2d 1196 (Tex.Civ.App.—Amarillo 1938, no writ). But, where an individual sues to recover for damages sustained by another entity, such as a corporation, the issue should be raised by a special exception or plea in abatement to question whether the plaintiff has standing or a justiciable interest in the controversy. *Cozad v. Roman*, 570 S.W.2d 558 (Tex.Civ. App.—Corpus Christi 1978, no writ); 2 R. McDonald, Texas Civil Practice in District and County Courts, sec. 7.12 (1982). *Also see Davis v. Davis*, 734 S.W.2d 707 (Tex.

App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.), and *Dickey v. Jansen,* 731 S.W.2d 581 (Tex.App.—Houston [1st Dist.] 1987, writ ref'd n.r.e.). Had Dr. Leong sued as stockholder for Leong & Associates, a corporation, "capacity" would have been a proper issue; but having sued individually, the issue was not capacity but "standing" which has not been raised. Point of Error No. One is overruled.

■■■■ The Appellants assert in their second point that the trial court erred in its submission of Special Issue No. Five on causation as a producing cause of damages because there was no evidence, or insufficient evidence, to raise the issue. First, we note that a court may not refuse to submit an issue because of insufficient evidence. *Brown v. Goldstein,* 685 S.W.2d 640 (Tex. 1985); *Volkswagen of America, Inc. v. Licht,* 544 S.W.2d 442 (Tex.Civ.App.—El Paso 1976, no writ). In reviewing a no-evidence point, we consider only the evidence and inferences favorable to the verdict and disregard all evidence and inferences to the contrary. *Garza v. Alviar,* 395 S.W.2d 821 (Tex.1965). The record contains correspondence of the doctor and his lawyers suggesting his patients were confused over the procedure which reflected a Dallas address on the Explanation of Benefits forms sent to patients. There is evidence of decrease in business, or at least a decrease in revenue and a reduction in the number of patients after 1976.

Dr. Leong presented the testimony of four patients, a medical secretary and medical assistant, all of whom testified concerning confusion among patients about whether or not the doctor had in fact moved to Dallas and was no longer treating patients in the El Paso area. All of those patients testified they continued to see Dr. Leong, and there is no evidence from any of those witnesses to establish the issue of causation between the conduct of Blue Cross/Blue Shield and the decrease in the number of patients. The medical secretary indicated that only about twenty patients out of about 1,200 had inquired if the doctor had moved to Dallas. The medical assistant testified that she did not believe the

practice of Blue Cross/Blue Shield caused any decline in the number of patients. But, Dr. Leong did in fact testify about his loss of patients and the causation issue. He said:

Q. Did you lose any patients the way you said, Doctor, as a result of the address change?

A. Yes.

Q. Can you tell us how many?

A. I don't have an accurate count, but I can tell you that there's been considerable loss since this address has been changed.

\* \* \* \* \* \*

Q. Can you tell the jury how many patients did not come back to you because of this address?

A. I cannot give you an accurate count, but there has been a considerable amount lost.

He also identified charts which reflected that between 1975 and 1981 his patient count dropped from about 12,800 to 8,200 per year. He concluded:

Q. To what do you attribute during these years the loss of patients?

A. Due to interference of Blue Cross and Blue Shield.

In considering only the evidence and inferences in support of the verdict and disregarding all contrary evidence, we conclude there is some evidence, weak though it may be, to support the verdict. Point of Error No. Two is overruled.

The Appellants contend in the next point of error that the evidence established the affirmative defense of accord and satisfaction as a matter of law. Dr. Leong testified that after he filed suit and obtained a temporary restraining order, he was restored to his original status as a provider of Medicare and Medicaid and all sums paid by him and withheld by Blue Cross/Blue Shield were refunded to him. A consent or agreed order was entered which recited court findings of these facts. For some unknown reason, the lawyers representing the Department of Health, Education and Welfare did not obtain a full release of all claims, although the doctor testified that

originally his only concern was to get Blue Cross to show his correct address. The order only disposed of the issues relating to the temporary restraining order and the return of sums paid and withheld. It did not make any mention of that part of the pending suit for damages and there is no evidence to suggest that either Blue Cross/Blue Shield urged or Dr. Leong thought that the relief obtained by filing this suit and obtaining a restraining order was in any way an accord, settlement or discharge of the claim for damages. An accord and satisfaction rests upon a new contract, expressed or implied, in which the parties agree to the discharge of an existing obligation in a manner otherwise than originally agreed. *Harris v. Rowe*, 593 S.W.2d 303 (Tex.1979). The three letters written in March 1979, to advise that the doctor was removed from a "suspended" status, that all monies would be refunded, and forwarding those funds, make no mention of the claim for damages and do not even suggest an accord has been reached. Point of Error No. Three is overruled.

■ We also overrule Point of Error No. Four which urges the trial court erred in failing to submit issues and instructions concerning accord and satisfaction. The evidence did not raise such an issue. The burden of proof was on Blue Cross/Blue Shield. *Id.* It did not present any evidence to raise that issue for the jury's determination. Point of Error No. Four is overruled.

■ In Points of Error Nos. Five, Six and Seven, complaint is made that the trial court erred in submitting the various questions under Special Issue No. 1C which inquired as to ten separate acts as being unfair, misleading or deceptive in the conduct of an insurance business to the injury or damage of the plaintiff. Eight of the issues inquire in varying forms about a representation that the doctor had a Dallas address. Seven of the first eight issues all made some inquiry about and specifically used the term "Dallas address" or "Dallas, Texas, address." Special Issue No. 1C(4) inquired about "an incorrect address." In *Mobile County Mutual Insurance Company v. Jewell*, 555 S.W.2d 903 (Tex.Civ.App.

—El Paso 1977), *writ ref'd n.r.e.*, 566 S.W. 2d 295 (Tex.1978), this Court held that recovery under the Insurance Code for deceptive practices was limited to the laundry list and did not include general or unlisted false, misleading or deceptive trade practices, nor unconscionable action, nor a general breach of warranty. *Also see American Insurance Companies v. Reed*, 626 S.W.2d 898 (Tex.App.—Eastland 1981, no writ). We conclude that the first eight inquiries in Special Issue No. 1C about a Dallas address were issues that inquired about disparaging the business of another by a false or misleading representation of facts under Tex.Bus. & Com.Code sec. 17.46(b)(8) (Vernon 1987). We have found no cases which interpret the limits of this particular section of the Code. Only one issue should have been submitted and all other issues were duplicitous. The last two inquiries inquired about unconscionable conduct and should not have been submitted under the holding in the *Jewell* case. Although the court erroneously fractured one issue into many parts, there can be no question about the right to a submission and finding upon the basic issue upon which the case was tried—a false and misleading address, if Section 17.46(b)(8) is applicable in this case. We conclude any error was harmless.

■ The complaint that the court failed to define "False Information and Advertising Generally" as those terms are defined in Tex.Ins.Code Ann. art. 21.21, sec. 4(2) (Vernon Supp.1988), cannot be sustained. Those particular words were not used in any special issue and the court should refrain from defining terms not appearing in its charge. *Ortiz v. O.J. Beck and Sons, Inc.* 611 S.W.2d 860 (Tex.Civ. App.—Corpus Christi 1980, no writ); *Brandon v. Cooper*, 591 S.W.2d 553 (Tex.Civ. App.—Amarillo 1979, writ ref'd n.r.e.). Further, the term as defined by the statute basically relates to an advertisement, announcement or statement with respect to the business of insurance or persons conducting insurance business. As such, it has no application to the issues submitted to the jury in this case. Points of Error Nos. Five, Six and Seven are overruled.

The next three points of error complain of the trial court's error in the submission of the issues and instructions on the wrongful interference cause of action. Under the standards set forth in *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1952), we have reviewed the entire record and find the evidence sufficient to support the jury findings on this theory of the case. The Court defined the term as set forth in *Cooper v. Steen*, 318 S.W.2d 750 (Tex.Civ.App.—Dallas 1958, no writ), and as quoted in this Court's opinion in *Herider Farms–El Paso, Inc. v. Criswell*, 519 S.W.2d 473 (Tex.Civ.App.—El Paso 1975, writ ref'd n.r.e.). The jury was required to find a willful and intentional act which caused injury and that it was done without just cause or excuse. We find no error in the instruction as given. The court correctly refused the requested definition of the Appellants which would have defined "wrongful interference with a business relationship" because it required a finding that the defendants "acted maliciously." We note that the issue of malice was separated out and submitted as a separate issue. Thus, it was not necessary to include malice as a part of the definition as to the inquiry in Special Issue No. One concerning wrongful interference. Points of Error Nos. Eight, Nine and Ten are overruled.

The next two complaints are with regard to the submission of the issues which inquired if the Appellants' conduct was a heedless and reckless disregard of the rights of others affected by it and the sum of money to be awarded as exemplary damages. Since the trial court trebled the actual damages under the Insurance Code violations and did not award any recovery for exemplary damages under the holding in *Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d 361, 367 (1987), any error in the submission of Special Issues Nos. Eight and Nine was harmless. Points of Error Nos. Eleven and Twelve are overruled.

Appellants assert the trial court erred in submitting a damage issue which inquired as to the loss of earnings and directed the jury to only include those damages sustained by the plaintiff from February 27, 1977, "to the present." It is argued that there was no evidence to support a finding of loss of earnings beyond June 30, 1981. Courts in this state have traditionally submitted issues inquiring as to both "past" and "future" damages. To require the court to select a magic date when damages either began or ceased could result in a comment on the weight of the evidence. Since there is no attack upon the finding of the amount of actual damages found by the jury in Special Issue No. Six, we conclude any error in the instruction was harmless. Point of Error No. Thirteen is overruled.

The Appellants contend the trial court erred in excluding from evidence after a hearsay objection an exhibit in which a patient had reported to a Social Security office that Dr. Leong required checks be sent to his office, even though the patient had paid all charges and was entitled to have the checks sent directly to the patient. The exhibit which contained statements made out of court was hearsay. 1A R. Ray, Texas Law of Evidence sec. 781 (1980). The exhibit was identified but never proven as a business record and never offered for the limited purpose of showing the complaint only and not the truth of the matter. The full import of the exhibit was explained to the jury prior to the court's removing it from the evidence. Point of Error No. Fourteen is overruled.

The last point of error urges that the trial court erred in failing to submit a requested instruction concerning the failure to mitigate damages. The trial court initially neglected to give such an instruction, although it had agreed to so instruct the jury. When the error was discovered, the court reassembled the jury and gave the instruction on mitigation. It also instructed them that if they had answered any damage issue to reconsider their answer in accordance with the instruction on mitigation of damages. The court was authorized to give the supplemental instruction. Tex.R.Civ.P. 286. No error is shown. Point of Error No. Fifteen is overruled.

The Appellee presents four cross-points in which he complains about how the trial court calculated the damages and pre-judgment interest. The Appellee did except to the judgment as entered and preserved his right to complain on appeal. *See Delhi Gas Pipeline Corporation v. Lamb*, 724 S.W.2d 97 (Tex.App.—El Paso 1986, writ ref'd n.r.e.); *McLemore v. Johnston*, 585 S.W.2d 347 (Tex.Civ.App.—Dallas 1979, no writ). The trial court awarded prejudgment interest of $205,564.68, such interest on $200,000.00 starting from March 22, 1979, when the Department of Health, Education and Welfare decided to refund all sums to Dr. Leong. Appellee claims he is entitled to interest from May 12, 1977, being six months after the date the address change began on November 12, 1976. But, we note the jury was only asked to find damages starting from February 27, 1977. There being no other date to establish when the cause of action arose, we believe interest should be calculated from six months after that date or beginning August 27, 1977. In *Cavnar v. Quality Control Parking, Inc.*, 696 S.W.2d 549 (Tex.1985), the Court noted that a plaintiff is not entitled to recover prejudgment interest on damages until those damages have actually been sustained. If Dr. Leong had no damages prior to February 27, 1977, then the rationale set forth in the *Cavnar* opinion should delay interest until six months after that date. Cross–Point of Error No. One is sustained in part.

The second cross-point asserts the trial court erred in failing to treble the award of prejudgment interest. The point is overruled on the reasoning set forth in *Hope v. Allstate Insurance Company*, 719 S.W.2d 634 (Tex.App.—Fort Worth 1986, writ ref'd n.r.e.). Neither is the Appellee entitled to recover both statutory treble damages and exemplary damages, and the contention to that effect in Cross–Point No. Three is also overruled. *Birchfield v. Texarkana Memorial Hospital*, 747 S.W.2d at 367, 31 Tex.Sup.Ct.J., at 39. We also hold the trial court correctly awarded the statutory damages in giving the actual damages and two times that amount. *Fairmont Homes, Inc. v. Upchurch*, 711 S.W.2d 618

(Tex.1986). Tex.Ins.Code Ann. art. 21.21, sec. 16(b)(1) (Vernon Supp.1988), specifically so provides. Cross–Point of Error No. Four is overruled.

The judgment of the trial court is affirmed in part, and is reversed only as to the award of prejudgment interest, and the case is remanded to the trial court only for the purpose of reforming the judgment so as to award prejudgment interest in accordance with this opinion.