Jack Richard HORTON, Shere L.
Griggs and Seville Financial,
Inc., Appellants,

v.

Glen ROBINSON, Appellee.

No. 08–89–00096–CV.

Court of Appeals of Texas,
El Paso.

Aug. 2, 1989.
Rehearing Denied Sept. 6, 1989.

Ted M. Akin, Akin & McMullen, P.C., John Alan Goren, Akin & McMullen, P.C., Dallas, for appellants.

Robert J. White, Plano, for appellee.

Before OSBORN, C.J., and WOODARD and KOEHLER, JJ.

## OPINION

OSBORN, Chief Justice.

This appeal is from a judgment based upon a jury verdict awarding damages to a party who had entered into a written agreement with two of the Appellants to form a corporation for the purpose of engaging in certain financial transactions. The Appellee alleged he was entitled to damages for breach of contract, breach of fiduciary duties and because of a conspiracy between the individual Appellants. The trial court's judgment reduced the actual damages found by the jury from $160,000.00 to $67,-488.33 and awarded $125,000.00 in exemplary damages against Horton and Seville and $50,000.00 in exemplary damages against Griggs and Seville, plus attorney's fees of $30,000.00, and interest and costs. We reform and affirm the judgment.

The three individuals entered into a written agreement on December 1, 1983, in which they were to form a financial services company to be composed of Seville Financial, Inc., and other companies. Each of the three parties were to own twenty percent of the parent company with the remaining forty percent to be available to attract other personnel and capital for the company. The agreement provided "profits are to be distributed pro-rata, 33⅓ each."

Robinson contended that Horton and Griggs decided at a meeting on February 18, 1984 to oust him from Seville. After that date, his requests for his share of the profits of the company were refused and he was not permitted to inspect the company books and records. Finally, in May 1984, he left Seville and obtained other employment.

The jury found (2) that Horton and Griggs failed to perform pursuant to the written agreement; (3) which proximately caused Robinson's damages; (6) a fiduciary relationship existed between Horton and Robinson; (7) Horton violated his fiduciary duties (8) which proximately caused damage to Robinson; (9) such violation was done willfully and maliciously; (10) Griggs entered into a civil conspiracy with Horton to violate fiduciary duties to Robinson; (11) such conspiracy proximately caused damage to Robinson; (12) she acted with malice in her conduct; (13) actual damages of $160,000.00; (14) exemplary damages as to Horton of $125,000.00 and as to Griggs of $50,000.00; (16) that Seville Financial, Inc. ratified (a) the failure to perform the written agreement (b) the violation of fiduciary duties and (c) the civil conspiracy. In the first question, the jury failed to find that Robinson waived his rights under the written agreement.

■ The Appellants present thirty-six points of error and the Appellee has one cross-point. Initially, Appellants assert that Appellee has failed to plead a cause of action for which he can recover in his individual capacity. They argue that Appellee, as a corporate stockholder, has no individual cause of action for personal damages caused solely by a wrong done to the corporation, even if he is injured by that wrong. Clearly, individual stockholders have no cause of action to recover damages sustained by a corporation. *Commonwealth of Massachusetts v. Davis,* 140 Tex. 398, 168 S.W.2d 216 (1942); *Group Medical and Surgical Service, Inc. v. Leong,* 750 S.W.2d 791 (Tex.App.—El Paso 1988, writ denied). But, an exception exists "where the wrongdoer violates a duty arising from contract or otherwise, and owing directly by him to the stockholder." *Commonwealth,* 168 S.W.2d at 222. The court recognized the exception is applied most often in cases where there was a fiduciary relationship which required the wrongdoer to protect the interest of the stockholder and this duty was violated. Also see *Stinnett v. Paramount–Famous Lasky Corporation of New York,* 37 S.W.2d 145 (Tex. Comm'n App.1931, holding approved); *Morrison v. St. Anthony Hotel, San Antonio,* 295 S.W.2d 246 (Tex.Civ.App.—San Antonio 1956, writ ref'd n.r.e.). In the *Morrison* case, Justice Pope noted the general rule but said, "in a proper case, where a majority stockholder has abused its discretion and has maliciously suppressed the payment of dividends, a stockholder may assert a cause of action for damages and may compel the declaration of dividends."

■ In this case, the Appellee alleged violations of his own individual rights. He claimed the Appellants Horton and Griggs breached a contract to which they were all parties and further that Horton breached independent fiduciary duties owed to him and Griggs conspired with Horton to breach those duties. Such pleading is sufficient to support a recovery in one's individual capacity.

■ Appellants also question Appellee's standing to file this suit. If that be an issue, the Appellants were required to raise the issue by a special exception or plea in abatement in the trial court. *Group Medical and Surgical Service, Inc. v. Leong,* 750 S.W.2d 791. That was not done and the issue may not now be raised for the first time on appeal. Neither did the Appellants file a sworn pleading under Tex.R. Civ.P. 93(2) to contest the Appellee's capacity to bring this suit. Appellants have waived their right to complain. *Pledger v. Schoellkopf,* 762 S.W.2d 145 (Tex.1988). Point of Error No. One is overruled.

■ The next four Points of Error attack the legal and factual sufficiency of the evidence to support the award of damages and particularly the jury finding of actual damages of $160,000.00. Question No. Thirteen inquired as to, "What sum of money, if any, if paid now in cash would fairly and reasonably compensate Glen Robinson for damages, if any?" There was no instruction with the issue. The Appellant does not present any point of error which attacks the form of this issue. The primary evidence on damages came from Willard Brown, a certified public accountant, who had examined various financial documents relating to Seville, including tax returns and monthly financial statements. He prepared a spread sheet analysis summarizing Seville's financial records for the end of each fiscal year from 1984 to 1986. This was undated to include the period ending July 31, 1987.

Brown defined net income, or profit, as the total income of the company less reasonable, ordinary and necessary business expenses. He reached the conclusion that Seville had $486,240.00 in profits available for distribution to the three stockholders during the period of his analysis, which would equal $162,080.00 to each of the three owners. The total figure included $111,742.00 of net income shown on Seville's financial records, $202,465.00 paid in excessive directors' fees, $160,000.00 paid as salaries to Horton and Griggs in 1987, along with income tax refunds and penalties of $12,033.00. The jury found this testimony credible and answered Special Issue No. Thirteen within the bounds set

by the accountant. His testimony was sufficient to support the verdict under the standards set forth in both *Garza v. Alviar*, 395 S.W.2d 821 (Tex.1965) and *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951). Points of Error Two through Five are overruled.

■ Appellants' next contention is that the jury's finding in answer to Question No. One—that Appellee did not waive his rights under the December 1, 1983 agreement—is against the great weight and preponderance of the evidence. In order to establish an abandonment or waiver of rights under a contract there must be proof of an intent to relinquish a known right. *Huffington v. Upchurch*, 532 S.W.2d 576 (Tex.1976). Waiver has been defined as an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it. *Massachusetts Bonding and Insurance Co. v. Orkin Exterminating Company*, 416 S.W.2d 396 (Tex.1967).

■ The evidence on the issue is conflicting. Appellants Horton and Griggs testified that they all agreed to part company at the February 18, 1984 meeting. They said it was agreed that Robinson would take the commercial leases, Horton would take the home improvement loans, and Griggs would take the mortgage loans, and each would go a separate way. But, Robinson said Griggs told him she could not work with him anymore and one of them was going to have to leave; and that he told her he would be sorry to see her go because he intended to remain with Seville. Horton admitted that in April 1984, he asked Robinson to sign a release, waiving his rights in Seville's home improvement division, and Robinson refused to sign. That could hardly be considered an intentional relinquishment of a known right.

Robinson testified that he continued to work full-time for Seville until May 1984, and continued to obtain leases for the company through August. He said he obtained employment elsewhere only after Horton refused to give him any money, although Horton acknowledged that he and Griggs were dividing Seville's income among themselves. Robinson did acknowledge that he

claimed one hundred percent ownership of post-February leases on his tax returns but indicated that the accountant who prepared the returns made a mistake, because he never intended to claim more than a one-third interest. Some of the leases had Horton's initials on them indicating his approval. Horton denied ever giving any approval for those particular leases, although he did acknowledge that he had initialed the documents. Clearly, the evidence was conflicting. Appellants claim that Robinson was reimbursed for out-of-pocket expenditures when he left the company and relinquished all of his rights. But, the evidence reflects Horton was also reimbursed for his expenditures and he never claims to have left and relinquished his rights. The jury chose to believe Robinson with regard to the waiver issue, and their answer is not against the great weight of the evidence. Point of Error No. Six is overruled.

■ The next four points of error assert there is no evidence and insufficient evidence to support the answers to Question Nos. Two and Three where the jury found that Horton and Griggs failed to perform pursuant to their written agreement which proximately caused damages to Robinson. The parties were to be equal owners of Seville and profits were to be distributed equally to them, at least until the other forty percent was distributed to other owners. The record is void of any proof that the three were paid equally. Horton and Griggs received very substantial directors' fees, although the company had no substantive directors' meetings, they also received substantial payments for automobiles, and were paid salaries, none of which were ever paid to Robinson. The testimony from Willard Brown alone was sufficient to support the jury's answers. Horton himself admitted that he and Griggs took money from the corporation, but that none was ever paid to Robinson. He testified:

Q. Do you recall Glen coming to you after the February 18th meeting and asking you for a distribution of money from Seville?

A. Yes.

Q. Did you decline to give him distribution from Seville?

A. Yes.

Q. But you took money from Seville didn't you?

A. Yes.

Q. And Shere Griggs took money from Seville?

A. Yes.

He acknowledged that in 1984, he "took out" $56,000.00 and Griggs "took out" $23,000.00. He said the accountant called it a directors' fee but he considered it to be ordinary income. During that time, he said there were no formal directors' meetings at Seville. There is no evidence Robinson ever received any funds from Seville. The jury's answers are supported by the evidence, and Points of Error Nos. Seven through Ten are overruled.

■ The next group of points present no evidence and insufficient evidence attacks upon the four jury findings as to the existence of a fiduciary relationship between Horton and Robinson, a breach of those duties which resulted in damages and that the breach was done willfully and maliciously or in conscious indifference to Robinson's rights. In *Kinzbach Tool Co., Inc. v. Corbett–Wallace Corporation,* 138 Tex. 565, 160 S.W.2d 509 (1942), the court said the term "fiduciary" includes those informal relations which exist whenever one party trusts and relies upon another party, as well as technical fiduciary relations. The relationship may arise from moral, social, domestic or purely personal relationships. *Thigpen v. Locke,* 363 S.W.2d 247 (Tex.1962). In *Texas Bank and Trust Company v. Moore,* 595 S.W.2d 502 (Tex. 1980), Justice Steakley wrote:

In resolving the problem of the existence or not of a fiduciary relationship this Court has severely scrutinized transactions between parties where trust and confidence is reposed by one, and personal profit is gained by another.

The evidence establishes that Robinson and Horton were long standing friends of twenty-four years beginning as roommates in boarding school and continuing as friends through high school and college. When Horton moved to Dallas, his family stayed in Robinson's home for a short time. Horton, an attorney, represented Robinson in a divorce case. They first began to have a business relationship in 1982, on a part-time basis. A layman would be expected to rely upon one who was an attorney when a new business was started, particularly where they were long-time friends and an attorney-client relationship had previously existed. A close scrutiny of the facts in this case indicate Robinson went into business with a long-time friend, having left his other employment believing that he was to receive one-third of the profit from the new business, only to learn in a short time that the other two owners were dividing the pie and he was not even getting the crumbs that might be left over. He could have believed that Horton and Griggs got the gold mine and he got the shaft.

■ Exemplary damages are recoverable when it is shown that a defendant has committed a willful, malicious or fraudulent wrong. *Ogle v. Craig,* 464 S.W.2d 95 (Tex.1971). In *Dennis v. Dial Finance & Thrift Company,* 401 S.W.2d 803 (Tex. 1966), Justice Walker noted that "[a] person who intentionally misrepresents facts for the purpose of injuring another is guilty of wanton and malicious conduct." The Court concluded that such conduct constituted willful and deliberate fraud and would support an award of exemplary damages. Actual malice is characterized by ill will or an intent to injure whereas implied or legal malice exists when wrongful conduct is intentional and without just cause or excuse. *Pace v. McEwen,* 574 S.W.2d 792 (Tex.Civ.App.—El Paso 1978, writ ref'd n.r.e.).

■ In this case, Robinson testified that when he initially asked Horton for money he was told, "Well, we're not making any money and there's no money to be had." He was told this same thing a number of times. Finally in May 1984, Horton admitted that he and Griggs had divided $79,000.00 and told Robinson, "You are not getting any portion of it." All of the evidence shows that Horton acted willfully

and maliciously and in total disregard of Robinson's rights under the parties' written agreement to share the benefits of their labor equally. By cutting out Robinson on the distributions, whether they were dividends, salary or some other type of income, Horton stood to profit more than was provided for when the three agreed to divide their earnings equally. Clearly, the one with a fiduciary duty intended to gain an additional benefit for himself and that is the type of conduct which permits the recovery of exemplary damages. *Interfirst Bank Dallas, N.A. v. Risser*, 739 S.W.2d 882 (Tex.App.—Texarkana 1987, no writ). Points of Error Nos. Eleven through Eighteen are overruled.

The Appellants also attack those jury findings that Griggs entered into a civil conspiracy with Horton to violate his fiduciary duties to Robinson. When a third party knowingly participates in the breach of a fiduciary duty, such third party becomes a joint tortfeasor and is liable as such. *Kinzbach Tool Co., Inc. v. Corbett–Wallace Corporation*, 138 Tex. 565, 160 S.W.2d 509 (1942); *Kirby v. Cruce*, 688 S.W.2d 161 (Tex.App.—Dallas 1985, writ ref'd n.r.e.). Griggs expressed an intent at the February meeting to no longer work with Robinson. She and Horton testified that they entered into a written agreement in April 1984 under the terms of which the written agreement dated December 1, 1983 was superseded, and Horton was to own seventy percent of Seville Financial, Inc., and Griggs was to own thirty percent. Robinson did not know about and was not a party to the new agreement which left him with no interest in the company. By entering into the new agreement, Griggs was a party to Horton's plan to remove Robinson from all ownership in Seville. The evidence supports the jury findings in answer to Questions Nos. Ten, Eleven and Twelve. Points of Error Nos. Nineteen through Twenty–Four are overruled.

Appellants also attack the sufficiency of the evidence to support the awards of exemplary damages. Such damages must be reasonably proportioned to actual damages, but there is no set formula for the ratio between actual and exemplary damages. *Interfirst Bank Dallas, N.A. v. Risser.* Factors which are to be considered in determining whether an award of exemplary damages is reasonable include: (1) the nature of the wrong, (2) the character of the conduct involved, (3) the degree of culpability of the wrongdoer, (4) the situation and sensibilities of the parties concerned, and (5) the extent to which such conduct offends a public sense of justice and propriety. *Alamo National Bank v. Kraus*, 616 S.W.2d 908 (Tex.1981).

In this case, the jury found the actual damages to be $160,000.00 and the exemplary damages were set at $175,-000.00, which were divided two-sevenths from Griggs and five-sevenths from Horton. The questions which inquired as to the amount of such damages were not conditioned upon a finding of a breach of contract. The trial court awarded those damages based upon findings as to a breach of a fiduciary relationship and a civil conspiracy. Where the law furnishes no legal measure of damages and they are unliquidated, the amount to be awarded rests largely in the discretion of the jury; and unless the award is so large as to indicate that it is a result of passion, prejudice or that the evidence has been disregarded, the verdict of the jury is conclusive and will not be set aside as excessive, either by the trial court or on appeal. *Kraus v. Alamo National Bank of San Antonio*, 586 S.W.2d 202 (Tex.Civ.App.—Waco 1979), *affirmed*, 616 S.W.2d 908 (1981). Points of Error Nos. Twenty–Five and Twenty–Six are overruled.

The Appellants argue in their next point, that the trial court erred in imposing personal liability against Horton and Griggs. They individually signed the written agreement with Robinson, they individually entered into a new agreement to supersede their agreement with him; and they individually received the gains from their wrongful conduct and they must suffer the lawful consequences. If they were not liable individually, they were required to file a sworn pleading under Tex.R.Civ.P.

93(2), and their failure to do so resulted in a waiver of the issue. Point of Error No. Twenty–Seven is overruled. °

 The next three points assert error in the award of attorney's fees. Such fees are recoverable for breach of contract. Tex.Civ.Prac. & Rem.Code Ann. sec. 38.- 001(8) (Vernon 1986). In order to recover, the claimant must present the claim to the opposing party. Section 38.002(2). Robinson alleged and proved that these parties entered into a written contract and that Horton and Griggs did not perform pursuant to the agreement. He offered in evidence demand letters which requested production of corporate records and demanded reasonable compensation as a director of Seville and his share of any dividend distribution.

 In answer to Question No. Four, the jury found Robinson was entitled to the issuance of five percent or more of the stock in Seville at the time he made demand to inspect the corporate books and records. That finding, which was supported by the written agreement, would support the recovery of attorney's fees under Tex.Bus.Corp.Act Ann. art. 2.44(C) (Vernon 1980). *Fort Worth KJIM, Inc. v. Walke*, 604 S.W.2d 362 (Tex.Civ.App.—Fort Worth 1980, writ ref'd n.r.e.). Points of Error Nos. Twenty–Eight through Thirty are overruled.

 The next issue is whether the evidence supports the jury finding in answer to Question No. Sixteen that Seville failed to perform the December 1, 1983 agreement and that the corporation violated fiduciary duties and committed a civil conspiracy. A corporation cannot be held liable for the acts of a principal which are not referrable to corporate business and which are unauthorized by the corporation. *Rhodes, Inc. v. Duncan*, 623 S.W.2d 741 (Tex.App.—Houston [1st Dist.] 1981, no writ). There can be no ratification of an act which is not done in behalf of, and does not purport to bind, the person against whom the doctrine of ratification is invoked. *Rhodes, Inc. v. Duncan; Herider Farms-El Paso, Inc. v. Criswell*, 519 S.W.2d 473 (Tex.Civ.App.—El Paso 1975,

writ ref'd n.r.e.). The breach of the 1983 agreement was not done on behalf of Seville; that resulted from the individual acts of Horton and Griggs. They committed the civil conspiracy and breached fiduciary duties, not Seville. Points of Error Nos. Thirty–One and Thirty–Two are sustained.

 The next complaint is that the trial court erred in awarding prejudgment interest. In *Perry Roofing Company v. Olcott*, 744 S.W.2d 929 (Tex.1988), the Court extended its holding on prejudgment interest to make the rule applicable to actions on contracts. In *Coulson and CAE, Inc. v. Lake LBJ Municipal Utility District*, 32 Tex.Sup.Ct.J. 442 (June 10, 1989), the Court, in a suit to recover contractual engineering fees, held that prejudgment interest began to run on the date the cause of action accrued. In that opinion, Chief Justice Phillips noted the date the contract was terminated and said that constituted an anticipatory repudiation upon which suit could be brought. In this case, the court awarded prejudgment interest from August 18, 1984, which was six months after the February 18th meeting at which Horton and Griggs sought to terminate Robinson's services with Seville. No reversible error is shown, and Point of Error No. Thirty-Three is overruled.

 The last three points of error attack the trial court's judgment granting injunctive relief. In addition to the award of damages, the trial court ordered the Appellants to issue twenty percent of the initial authorized shares of common stock to Robinson and that the corporation hold meetings, comply with the Business Corporation Act and that it permit Robinson the right to examine the books and records of the corporation. The net effect of the judgment was to award Appellant both specific performance and damages arising from the same acts which resulted in the breach of contract. Specific performance is available to a party when damages will not adequately compensate the party for his loss, and he has no adequate remedy at law. 44 Tex.Jur.3d, Injunctions sec. 43. The Appellee argues that under the holding

in *Sinclair Refining Co. v. McElree*, 52 S.W.2d 679 (Tex.Civ.App.—Dallas 1932, no writ), where wrongful acts are recurrent or continuous, an injured party is entitled to equitable relief regardless of the wrong-doer's ability to pay damages. The decision in that case is not applicable in this case. When stock was not issued to Robinson, the contract was breached and he was entitled to recover all of his damages, past, present and future. There is no continuing breach which can be remedied only by injunctive relief. In this case, there is an adequate remedy at law. Only if there is no adequate remedy at law can equitable relief be granted. *Public Utility Commission of Texas v. Pedernales Electric Cooperative, Inc.*, 678 S.W.2d 214 (Tex.App.—Austin 1984, writ ref'd n.r.e.). Point of Error No. Thirty–Five is sustained and Points of Error Nos. Thirty–Four and Thirty–Six are overruled.

In a single cross-point, the Appellee urges that the trial court erred in remitting the actual damages awarded by the jury in their answer to Question No. Thirteen. This is not a true case of remittitur. The trial court did not provide that a new trial would be ordered unless a remittitur was filed. The first judgment entered in this case awarded Robinson actual damages of $160,000.00 as found by the jury. Following the filing of a Motion for New Trial, the court entered a Modified Judgment and awarded actual damages of $67,488.33, which was one-third of what had been labeled as unauthorized director's fees in the amount of $202,465.00. The Appellant did not except to the entry of the Modified Judgment nor did he perfect an appeal from the second judgment. The Appellants assert that Robinson was required to file a cost bond and perfect an appeal in order to complain about the final judgment entered in this case. They rely upon the holdings in *Essex Crane Rental Corporation v. Striland Construction Company, Inc.*, 753 S.W.2d 751 (Tex.App.—Dallas 1988, writ denied) and *Chapman Air Conditioning, Inc. v. Franks*, 732 S.W.2d 737 (Tex.App.—Dallas 1987, no writ).

This Court held on numerous occasions that an appellee was required to except to the entry of a judgment in order to complain by a cross-point of any error. *Delhi Gas Pipeline Corporation v. Lamb*, 724 S.W.2d 97 (Tex.App.—El Paso 1987, writ ref'd n.r.e.); *Stendebach v. Campbell*, 665 S.W.2d 557 (Tex.App.—El Paso 1984, writ ref'd n.r.e.); *Dietz v. Dietz*, 540 S.W.2d 418 (Tex.Civ.App.—El Paso 1976, no writ).

In *Donwerth v. Preston II Chrysler–Dodge, Inc.*, 775 S.W.2d 634 (1989), the Court, in an opinion by Justice Spears, wiped out all requirements and conditions which had been laid down by various intermediate courts before they would consider cross-points of an appellee where there was no limited appeal by the Appellant. The court held that in a normal appeal "an appellee may complain by cross-point in his brief in the court of appeals, without perfecting an independent appeal, of any error in the trial court as between appellant and appellee". The concurring opinion by Justice Ray notes that the Court, by implication, disapproves the language of cases purporting to find limitations on the appellee's right to assert cross-points. The cases listed included those relied upon by the Appellants from the Dallas Court.

Having previously determined that there is sufficient evidence to support the jury's answer to Question No. Thirteen, we conclude that the trial court erred in reducing the damages found by the jury, and we sustain the Appellee's cross-point.

The judgment of the trial court is reformed, Glen Robinson shall recover his actual damages in the sum of $160,000.00 from Jack Richard Horton and Shere L. Griggs, all injunctive relief is vacated and denied, and all relief against Seville Financial, Inc., is vacated and denied, and in all other respects the judgment of the trial court is affirmed.