Robert D. LaCOURE, Sr., Appellant,

v.

Kim Ann LaCOURE, Appellee.

No. 08–91–00134–CV.

Court of Appeals of Texas, El Paso.

Nov. 27, 1991.

Rehearing Overruled Jan. 2, 1992.

---

**2.** The information did not charge Holland with having an open container of alcohol for en-hancement of punishment.

John F. Nichols, Piro*Nichols*Lilly, Houston, Ann Crawford McClure, El Paso, Earle S. Lilly, Piro & Lilly, P.C., Houston, for appellant.

Ben A. Baring, Jr., Paul J. McConnell, III, Susan J. Taylor, DeLange, Hudspeth & Pitman, Houston, for appellee.

Before OSBORN, C.J., and FULLER and KOEHLER, JJ.

## OPINION

KOEHLER, Justice.

In a suit for damages for intentional infliction of emotional distress and mental anguish arising out of an alleged wrongful foreclosure and eviction from residential property, the court, based on the jury's answers to the questions submitted to it, gave judgment to the Plaintiff/Appellee for $136,000 actual damages and $300,000 exemplary damages. Defendant/Appellant brings eight points of error claiming among other things, factual and legal in-

sufficiency of the evidence to support the jury's findings, erroneous exclusion of evidence, excessiveness of the exemplary damage award, remarks and questions by the court constituting a comment on the weight of the evidence and improper award of prejudgment interest. We affirm.

Robert D. LaCoure, Sr. (Robert), Appellant, is the former father-in-law of the Appellee, Kim Ann LaCoure (Kim). She had married Robert D. LaCoure, Jr. (Bobby) in October 1980 and was divorced from him on May 14, 1985, the decree naming them as joint managing conservators of their only child, Robert D. LaCoure III. Prior to this marriage, in March 1980, Robert had arranged to purchase a house located at 14015 Woodforest in Houston for $65,000. He sent Bobby to the closing on April 9 with a cashier's check for the balance of the purchase price. A general warranty deed conveyed the property to Robert D. LaCoure, Jr. and a title insurance policy was issued to him, the policy stating that the property was not subject to any liens or any instruments creating or evidencing such liens. Shortly after the closing, Bobby moved into the house and Kim moved in with him sometime later. Robert paid for remodeling of the house and adding a swimming pool and also paid the taxes and insurance on the house. In the divorce settlement and decree, it was agreed and ordered that Kim was to have sole possession of the house "as long as she remains unmarried, does not have any live in companions, until the minor child attains the age of eighteen (18), or as long as Petitioner [Bobby] is able to pay the insurance and taxes on said property; ...." Upon the occurrence of any of those events, the house was to be sold and the net proceeds split 55 percent to Bobby and 45 percent to Kim.

A note and deed of trust against the property, signed by Bobby in favor of Robert, dated April 9, 1980, was filed for record in the deed records of Harris County on July 12, 1985, nearly two months after the date of the divorce. Based on those documents and Bobby's default in making note payments, Robert foreclosed on the property and took a trustee's deed on March 4, 1986. Thereafter, in May 1988, Robert commenced a forcible detainer suit against Kim and had her evicted from the property, ostensibly on the grounds that she had a live-in boyfriend. Kim commenced this suit against Robert in June 1988, seeking damages for intentional infliction of emotional distress caused by the wrongful foreclosure and eviction. At the conclusion of the trial, the jury found that Robert intended to make a gift of the property to Bobby in April 1980 and that Kim acquired her interest in the property at time of the divorce without notice that Robert was claiming an interest. The jury then found that Robert's acts amounted to intentional or reckless, extreme and outrageous conduct proximately causing Kim to suffer severe emotional distress and resulting in the actual and exemplary damages found by it.

Although Robert claimed that Bobby improperly inserted "Jr." after his name as grantee on the deed at the time of closing, he does not contest the jury's finding that he intended to make a gift of the property to Bobby and in fact, stipulated that if the jury so found, then the foreclosure and eviction would be wrongful without the need for a jury issue and finding on that subject.

In his first point of error, Robert asserts no evidence and insufficient evidence to support the jury's finding of intentional infliction of emotional distress.

When presented with a "no evidence" challenge, the appellate court should consider only the evidence and reasonable inferences drawn therefrom which, when viewed in their most favorable light, support the jury verdict or court finding. All evidence and inferences to the contrary are to be disregarded. *Stafford v. Stafford*, 726 S.W.2d 14, 16 (Tex.1987); *Alm v. Aluminum Company of America*, 717 S.W.2d 588, 593 (Tex.1986). If there is more than a scintilla of evidence to support the questioned finding, the no evidence point fails. *Stafford*, 726 S.W.2d at 16.

When a factual sufficiency challenge is brought, the court must first ex-

amine all of the evidence, *Lofton v. Texas Brine Corporation*, 720 S.W.2d 804, 805 (Tex.1986); and after considering and weighing all of the evidence, the court may set aside the finding only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Cain v. Bain*, 709 S.W.2d 175, 176 (Tex.1986). Since an appellate court is not a fact finder, it may not pass upon the credibility of the witnesses or substitute its judgment for that of the trier of fact, even if the evidence would support a different result. *Clancy v. Zale Corporation*, 705 S.W.2d 820, 826 (Tex.App.—Dallas 1986, writ ref'd n.r.e.).

■ The four elements of the tort of intentional infliction of emotional distress (correctly set forth in jury question number three) are: (1) the defendant acted intentionally or recklessly; (2) such conduct was extreme and outrageous; (3) the conduct of the defendant caused the plaintiff mental distress; and (4) such distress was severe. *Bushell v. Dean*, 781 S.W.2d 652, 657 (Tex. App.—Austin 1989), *rev'd on other grounds*, 803 S.W.2d 711 (Tex.1991). Robert contends that Kim failed to establish these four elements by the evidence in the case.

■ The first element, intentional or reckless conduct, requires a showing either that Robert desired to inflict severe emotional distress on Kim or that his conduct was done without regard for Kim's rights or well-being. Intentional or reckless conduct requires a showing that the actor desires to cause the consequences of his act. In this connection, Robert admitted that he intended to cause the foreclosure and eviction, but argues that he did not specifically intend to cause Kim's emotional distress. Intent may be inferred from the circumstances and the conduct of the actor, not just from the overt expressions of intent by the actor.

■ Testimony from his secretary showed that Robert was upset about the divorce decree awarding Kim part of the property. The evidence conclusively shows that after the divorce, Robert knowingly allowed or caused the execution by his son, Bobby, of the note and deed of trust and the backdating of those documents to April 9, 1980, the property closing date. He then brought the foreclosure on the strength of those documents, and later the eviction of Kim because he thought, from the cars parked around the house, that she was allowing her boyfriend or friends to stay there. The evidence further shows that not only did Robert evict Kim and his grandson without giving her any payment for her interest in the property based on the divorce settlement, but he brought a counterclaim against her in the instant case for attorney's fees and for damages to and maintenance of the property even though he knew that Bobby was responsible for the latter under the terms of the divorce decree. These facts alone, particularly the falsifying of the documents, are sufficient evidence from which the jury could find the necessary intentional or reckless conduct.

■ The second element, extreme and outrageous conduct, is also supported by the evidence. Robert's only argument here is that this case is not as extreme as other cases, citing for example *Kramer v. Downey*, 680 S.W.2d 524 (Tex.App.—Dallas 1984, writ ref'd n.r.e.), in which a woman followed her ex-lover, a married man, daily for several years. However, each intentional infliction of mental distress case must be decided on its own facts, as interpreted and weighed by the fact finder. In this case, in addition to the foregoing evidence of Robert's conduct, there was testimony about a phone call Kim received in which the caller told her if she testified in a court proceeding involving Robert, she would be evicted from the house sooner. There was also some testimony suggesting that Robert's nephew, Joe McNeely, a boxer with whose reputation Kim was somewhat familiar, may have been placed in a position after the taking of some depositions to intimidate her into dropping this lawsuit. She received phone calls from her ex-husband and others trying to make her go away. We conclude that the evidence was legally and factually sufficient for the jury to have found that the distress inflicted was so severe that no reasonable person

could be expected to endure it without suffering severe mental distress.

The third element, proximate cause, is also supported by the evidence. Kim presented evidence that during the period when she was threatened with eviction and was actually evicted, she would get up at night and cry, she was irritable and emotional, she had difficulty eating and sleeping, she was worried about her son, was nervous and afraid of Robert, and felt that preventing the eviction was hopeless. While there was some evidence that factors other than Robert's conduct may have caused or contributed to Kim's mental distress, the jury was presented with that evidence and apparently was not persuaded by it. It is not proper for this Court to substitute its judgment for that of the jury. *Skaggs Alpha Beta, Inc. v. Nabhan*, 808 S.W.2d 198, 201 (Tex.App.—El Paso 1991, no writ).

As to the fourth element, severity of the distress, Robert argues that compared to other cases, Kim's distress was not severe. The trial court correctly instructed the jury that " '[s]evere emotional distress' means any highly unpleasant mental reaction such as fright, horror, grief, shame, humiliation, embarrassment, anger, chagrin, disappointment, worry and nausea." *Tidelands Automobile Club v. Walters*, 699 S.W.2d 939, 941, 945 (Tex.App.—Beaumont 1985, writ ref'd n.r.e.). Our Supreme Court has held that jurors are best able to determine "whether and to what extent the defendant's conduct caused compensable mental anguish by referring to their own experience." *St. Elizabeth Hospital v. Garrard*, 730 S.W.2d 649, 654 (Tex. 1987). The evidence of Kim's emotional distress, taken in context with her problems, went beyond the "mere worry, anxiety, vexation, embarrassment or anger" expressed in *City of Ingleside v. Kneuper*, 768 S.W.2d 451, 460 (Tex.App.—Austin 1989, writ denied); *National Union Fire Insurance Company of Pittsburgh, Pennsylvania v. Dominguez*, 793 S.W.2d 66, 73 (Tex.App.—El Paso 1990, writ denied). Point of Error No. One is overruled.

In Robert's second point of error, he asserts no evidence or factually insufficient evidence to support the jury finding of $100,000 in damages for Kim's physical discomfort, pain and emotional distress caused by Robert's conduct.

We have previously concluded that there is evidence from which the jury could and did conclude that Kim suffered severe emotional distress. She and her young son were forced out of the house in which she claimed, and the jury in effect found, that she had a 45 percent interest. Both from her testimony and their own experience, the jurors could have concluded that a wrongful eviction was a very devastating and distressful ordeal. As we stated in *Dominguez*, "[o]nce it is determined that there was sufficient evidence to raise the question, the translation of mental anguish into a dollar amount is necessarily an arbitrary process, not subject to objective analysis." *Larson v. Cactus Utility Company*, 730 S.W.2d 640, 641 (Tex.1987); *Paragon Hotel Corporation v. Ramirez*, 783 S.W.2d 654, 660 (Tex.App.—El Paso 1989, writ denied); *Daylin, Inc. v. Juarez*, 766 S.W.2d 347, 352 (Tex.App.—El Paso 1989, writ denied). The matter of determining damages for mental anguish is largely within the discretion of the jury. *Tidelands*, 699 S.W.2d at 945. There are no objective standards by which to measure such damages. *Skaggs*, 808 S.W.2d at 202. It is not the prerogative of this Court to substitute its judgment for that of the jury in determining the amount of damages to be awarded Kim for the emotional distress it found she suffered. Point of Error No. Two is overruled.

In the third point of error, Robert contends that there is either no evidence or insufficient evidence to support the jury finding that he acted with malice, and in his fifth point, he asserts that the jury finding of $300,000 in exemplary damages is grossly excessive. After stating to the jury that malice may be actual or implied, it was instructed:

Actual malice exists when an act is done with ill-will, bad or evil motive, or with such gross indifference or reckless dis-

regard to the rights of others as will amount to willful or wanton act.

Malice may be implied from a wrongful act which is intentionally done without just cause or excuse.

Robert does not quarrel with the foregoing instruction, contending only that the evidence does not warrant a finding of actual or implied malice. It has been said that actual malice is identified by ill will or an intent to injure whereas implied or legal malice exists when wrongful conduct is intentional and without just cause. *Horton v. Robinson*, 776 S.W.2d 260, 265 (Tex.App.—El Paso 1989, no writ). Malice may be inferred from the conduct and acts of the wrongdoer. *Tennessee Gas Transmission Company v. Moorhead*, 405 S.W.2d 81, 86 (Tex.Civ.App.—Beaumont 1966, writ ref'd n.r.e.). A jury finding of malice should be given great weight since the jurors are in a position to observe the demeanor and to judge the credibility of the witnesses. *State National Bank of El Paso v. Farah Manufacturing Company, Inc.*, 678 S.W.2d 661, 669 (Tex.App.—El Paso 1984, writ dism'd by agr.).

The evidence shows that Robert was upset and angry when he learned that Bobby had agreed to a divorce settlement awarding a substantial percentage of the house to Kim and that he took part in falsifying the date of the documents which were used to foreclose on the property and evict Kim and his grandson. Although he stipulated at the end of the trial that the foreclosure and eviction were wrongful in the event the jury found a gift, the truth about the preparation and filing of the deed of trust and note only came about through cross-examination when it was revealed that the documents were prepared on State Bar of Texas forms revised in October 1983. The jury could have believed from the evidence that Robert and his employees had committed perjury in their testimony about how and when the preparation and filing of the documents took place. The evidence suggested a collusion between Robert and a justice of the peace in effectuating the eviction.

Exemplary damages are recoverable when the evidence supports a finding that a defendant has committed a willful, malicious or fraudulent wrong. *Horton*, 776 S.W.2d at 265. Exemplary damages are in the nature of a fine or punishment for wrongdoing. There is no exact formula in setting the amount of exemplary damages. *Wright v. Gifford–Hill & Company, Inc.*, 725 S.W.2d 712, 714 (Tex. 1987). The amount awarded rests within the discretion of the jury and will not be set aside unless the award is so large as to indicate that it resulted from passion or prejudice. *Horton*, 776 S.W.2d at 266. The exemplary damages should be rationally related and reasonably proportioned to the actual damages. *Wright*, 725 S.W.2d at 714; *Horton*, 776 S.W.2d at 266. In this case, the actual damages awarded in the judgment of $136,000 bears a ratio of approximately 1 to 2.2 to the $300,000 awarded as exemplary damages. We do not consider the exemplary damages to be unduly excessive when considered in the context of the evidence of wrongdoing the jury had before it. Points of Error Nos. Three and Five are overruled.

In Point of Error No. Four, Robert contends that the trial court erred in excluding evidence that he had offered to establish a trust fund for his grandson and that Kim had at one time engaged in drug and alcohol abuse. In order for this Court to conclude that the exclusion of evidence was reversible error, we must first find that an error was committed and second, that such exclusion was reasonably calculated and probably did cause the rendition of an improper judgment. *Gee v. Liberty Mutual Fire Insurance Company*, 765 S.W.2d 394, 396 (Tex.1989); Tex. R.App.P. 81(b)(1). Where evidence was erroneously excluded, that error is not reversible unless the case turns on the particular evidence excluded. *Shenandoah Associates v. J & K Properties, Inc.*, 741 S.W.2d 470, 493 (Tex.App.—Dallas 1987, writ denied).

The trial court did not err in excluding Robert's offer to establish a trust for his grandson. Evidence of conduct or

statements made in compromise negotiations is not admissible. Tex.R.Civ.Evid. 408.

Next, Robert argues that evidence of Kim's alcohol and drug history should not have been excluded because it impacted on her credibility as a witness. He contends that it would affect her claims for actual and exemplary damages since drug and alcohol abuse can cause emotional distress and symptoms similar to those related by Kim to the jury. The trial court excluded the evidence as irrelevant. Robert's bill of exceptions alleged that the last known date of Kim's drug use occurred almost four years before the eviction. He offered no evidence that she was currently (at the time of the eviction) using drugs nor did he offer any evidence that drugs allegedly used by Kim would cause the same or similar symptoms of emotional distress that she had experienced. Point of Error No. Four is overruled.

Under his sixth point, Robert asserts that there is either no evidence or factually insufficient evidence to support the valuations of the property found by the jury for the years 1986 and 1988. The jury found these values to be $75,000 and $80,000, respectively.[1] Kim testified that she was familiar with property values in the area where the Woodforest house is located for both of the years in question. In her opinion, the fair market value of the house in both 1986 (the date of foreclosure) and 1988 (the date of eviction) was approximately $100,000. Robert's expert witness, Vondane Sessna, the realtor who represented Robert in the purchase of the property in 1980, testified that in 1986 the value of the property was between $55,000 and $60,000. It was her opinion that the value of the property in 1988 was at most $55,000. She admitted that she had not been inside

the house since 1980, but had merely driven by and looked in the window on some unknown occasion. There was some evidence that the property improvements were insured by Robert who was paying the premiums for $100,000.

Robert contends that Kim was not qualified to give opinion testimony on real estate values and that after disregarding her testimony, the only evidence on value was that given by Robert's witness. Since the jury found higher values than those testified to by Sessna, he argues that there was an improper "blending" of her valuations with the evidence of insurance coverage, with a result that is contrary to *Callejo v. Brazos Electric Power Cooperative, Inc.,* 755 S.W.2d 73, 75 (Tex.1988). We disagree with these contentions. As stated in *Southwestern Public Service Company v. Vanderburg,* 581 S.W.2d 239, 244 (Tex.Civ.App.—Amarillo 1979, writ ref'd n.r.e.):

Whether a witness is qualified to testify regarding market value of property is largely within the sound discretion of the trial court, [citation omitted] and there is no abuse of discretion in admitting the testimony if the witness's qualifications meet the legal test. [Citation omitted]. Generally, a witness will be qualified to give his opinion about market value if he has knowledge of the value standards of the class of property to which the subject property belongs. In this regard, the witness must have a knowledge of market value in the vicinity of the subject property based at least in part on personal observation and not solely on hearsay, and, additionally, he must have a knowledge of the particular property to be valued. [Citation omitted]. A statement by the witness that he knows the land in

1. We are unable to determine from the record what significance the jury findings on the value of the property in 1986 and 1988 had on the judgment subsequently rendered by the court. The jury found actual damages of $123,250 (physical discomfort, pain and emotional distress, $100,000; moving expense, $2,250; and loss of rental income, $21,000). The judgment awarded Kim $136,000 in actual damages. Neither the record nor the judgment reveals how

the judge arrived at the latter figure. Although Kim pled for her 45 percent interest in the title and for possession of the property, and for removal of all clouds on the title created by Robert, the judgment is silent on that relief as well. It is suggested by Robert's brief that the court awarded Kim 45 percent of the 1988 valuation of $80,000 ($36,000) in lieu of the moving expense, loss of rental income and title and possession of the house.

question and is acquainted with the market value is sufficient to authorize the reception of his valuation testimony. [Citation omitted].

Applying these principles to Kim's testimony on value, we conclude that she was qualified to testify and that it was a matter for the jury to determine how much weight to put on her value testimony, as supported by the amount of insurance put on the property by Robert, and that of Sessna. Since the values found by the jury fell between the values placed on the property by Sessna and Kim, Robert has failed to show a blending of values, as proscribed by *Callejo*. The sixth point of error is overruled.

 Under Point of Error No. Seven, Robert contends that certain comments and questions directed by the court to him amounted to a forbidden comment on the weight of the evidence, and for that reason, the court erred in overruling his motion for new trial. The problem here is that, assuming the judge's comments and his questioning of Robert were improper, counsel for Robert made no objection. As is the case with the improper admission of evidence generally, error is not preserved unless a timely objection is made. *Wenco of El Paso/Las Cruces v. Nazario*, 783 S.W.2d 663, 666 (Tex.App.—El Paso 1989, no writ); Tex.R.App.P. 52(a); Tex.R.Civ. Evid. 103(a)(1). The seventh point is overruled.

In the eighth point of error, Robert asserts that the court erred in awarding prejudgment interest because it constitutes a double recovery. The contention here is that since the jury was asked and answered, "[w]hat sum of money, *if paid now in cash,* would fairly and reasonably compensate Kim ... for her injuries, ...," she was not entitled to prejudgment interest, citing *Aetna Insurance Company v. Paddock,* 301 F.2d 807, 812 (5th Cir.1962) in support of that assertion.

Prejudgment interest is additional damages for the loss of use of money due as damages during the period between the accrual of the claim and the date of judgment. A prevailing plaintiff is entitled to recover prejudgment interest as a matter of law on damages that have accrued by the time of judgment. *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549, 552–555 (Tex.1985). A successful plaintiff is entitled to prejudgment interest on damages awarded for intentional infliction of emotional distress. *Bulgerin v. Bulgerin,* 724 S.W.2d 943, 946 (Tex.App.— San Antonio 1987, no writ). Point of Error No. Eight is overruled.

Judgment of the trial court is affirmed.