Richard E. WHORRALL, Appellant,

v.

Ilene Crafton WHORRALL, Appellee.

No. 14239.

Court of Appeals of Texas, Austin.

April 17, 1985.

Rehearing Denied May 15, 1985.

Philip C. Friday, Jr., Austin, for appellant.

J. Neill Wilkerson, Georgetown, for appellee.

Before SHANNON, C.J., and EARL W. SMITH and BRADY, JJ.

SHANNON, Chief Justice.

Appellant Richard E. Whorrall filed suit in the district court of Williamson County seeking a divorce from appellee Ilene Crafton Whorrall. By his suit, Richard also sought a division of the parties' community property. The union, being a "September marriage," produced no off-spring.

After a bench trial, the district court rendered judgment granting the divorce and dividing the community property between the parties. Upon appellant's request, the district court filed findings of fact and conclusions of law.

Richard claims that the district court erred (1) in awarding to Ilene all right, title, and interest in the parties' house located in Round Rock and (2) in awarding to Ilene a one-half interest in a payment conferred upon Richard by his former employer IBM.

## I.

### THE HOUSE

The parties' married on February 11, 1977. At that time, Richard was fifty-six and had been married before. Ilene was forty-four and had been married twice previously. About two weeks after their marriage, the couple purchased a house and lot located in Round Rock for $55,450.00. The purchase was financed as follows: the couple signed a note for $35,000.00 secured by a deed of trust; Richard contributed $500.00 of his separate funds as earnest money and Ilene paid $21,250.67 of her separate funds at closing for the down payment and closing costs.

· In its findings and conclusions, the district court characterized the parties interest in the house as follows.

(1) Richard owned, as his separate property, a .9% interest in the house representing a value of $938.17. This separate interest was acquired by virtue of Richard's initial contribution of $500.00 from his separate property.

(2) Ilene owned, as her separate property, a 37.6% interest in the house valued at $39,973.70. This determination resulted from the district court's finding that Ilene contributed $21,250.67 of her separate funds toward the purchase of the house.

(3) The community estate owned a 61.6% undivided interest in the house valued at $32,387.40 (after subtracting the balance of the purchase money note).

In the judgment the district court vested the complete title in the house in Ilene. Accordingly, the district court awarded Ilene all of the community interest in the house as well as Richard's .9% separate interest.

By his point of error four, Richard asserts that the district court's finding that Ilene's separate estate owned a 37.6% undivided interest is supported by insufficient evidence. In reviewing factual sufficiency

points of error, the reviewing court considers all of the evidence to determine whether the findings are so against the great weight and preponderance of the evidence as to be manifestly unjust. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1951).

It is trite learning that the weight and probative force of evidence is entirely for the fact finder. Likewise, the fact finder is the exclusive judge of the credibility of the witnesses and the weight to be attached to their testimony. The fact finder may believe the testimony of one witness and reject the testimony of other witnesses. Similarly, the fact finder may accept part of the testimony of one witness and disregard the remainder. The finder of fact may resolve conflicts and inconsistencies in the testimony of any one witness as well as the testimony of different witnesses. I Ray, Law of Evidence § 3 (3rd ed. 1980).

The district court found that Ilene contributed $21,250.67 from her separate funds toward the purchase of the house. In addition, the parties stipulated that title to the house was taken in their joint names. Richard suggests that these undisputed facts give rise to three community property law presumptions which Ilene did not rebut by sufficient evidence. Accordingly, Richard argues that the district court should have concluded that the house was entirely the property of the community estate. This Court does not agree.

■ Richard urges first the presumption that property acquired during marriage is presumed to be a part of the community estate. Tex.Fam.Code Ann. § 5.02 (1975). This presumption may be overcome by "clear and convincing" or "clear and satisfactory" proof, by identifying and tracing the property claimed as separate to a separate source of funds or credit used in its purchase. *McKinley v. McKinley*, 496 S.W.2d 540 (Tex.1973); *Bilek v. Tupa*, 549 S.W.2d 217 (Tex.Civ.App.1977, writ ref'd n.r.e.). Ilene testified that her $21,250.67 down payment was obtained from the sale of her duplex, the sale being made before her marriage to Richard. The couple pur-

chased the house in Round Rock about two weeks after they were married. Upon examination, Richard conceded that this payment came from funds Ilene possessed before marriage. Accordingly, there was sufficient evidence of a clear and satisfactory nature to overcome this presumption.

■ Richard then points to the presumption that one spouse intends to make a gift to the other of one-half of his separate contribution made to purchase real estate during marriage when title to such real estate is taken in the name of both spouses. *Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex.1975). This presumption, nevertheless, may be rebutted by evidence clearly establishing that there was no intention to make a gift. *Cockerham v. Cockerham, supra.*

■ Ilene testified that she had been through two previous marriages in which her husbands had been financially irresponsible and had taken financial advantage of her. She testified specifically that she did not intend to make a gift of one-half of the $21,250.67 as she "couldn't afford to do that." She explained further that she and Richard wanted to purchase a house and she put in the large down payment as a condition that he make all the remaining mortgage payments. Ilene also stated that her advancing the down payment was necessary because Richard "was broke" and told her that due to his recent divorce, "I don't have any money."

The outlined evidence overcame the presumption of gift, thereby leaving a fact issue to be determined by the district court. The great weight of the evidence supports the district court's determination of no intention by Ilene to make a gift to Richard of one-half of the $21,250.67 down payment.

■ Finally, Richard advances the argument that when real property is acquired during marriage and title to that property is taken in the name of both spouses, a presumption arises that the spouses agreed that the real estate would be owned by the community estate. *Gonzalez v. Guajardo*

*de Gonzalez,* 541 S.W.2d 865 (Tex.Civ.App. 1976, no writ); *Robbins v. Robbins,* 519 S.W.2d 507 (Tex.Civ.App.1975, no writ).

The evidence is conflicting as to the parties' agreement respecting the ownership of the house. Ilene testified that she and Richard discussed, before its purchase, the financing of the new house. She told Richard that she would be willing to make the large down payment "if that will constitute payment in full for my one-half interest in the house." She further related to Richard, "Then, if you make the mortgage payments and pay off the mortgage, we will own the house 50/50." Ilene further testified that the couple made an agreement that Richard would not become immediate half owner of the property upon purchase but "would own a full half interest in the house at the time that he paid off the mortgage."

Richard testified that the couple discussed purchasing a house before marriage and "We had an agreement that we would own the home equally, regardless of who paid what." He further testified:

> And we had quite a lot of conversation about it and the net of that conversation was that we were in love and it didn't make any difference who made the down payment. I said to her, "I don't think I could live in a home with a wife if I wasn't the co-owner." And she agreed and the agreement was that we would own the home equally.

■ Ascertaining the agreement of the parties is especially difficult in view of their lack of knowledge of community property law and their use of such terms as "jointly." It seems that Ilene thought that her down payment vested her with one-half interest in the house as her separate property and that her husband would acquire a separate one-half interest upon completing the balance of the payments. Her use of the term "jointly" could mean possibly that she intended that each party's separate estate own one-half of the house in a tenancy-in-common. Despite the legal inaccuracy (for the mortgage payments were made with community funds even though hus-

band made them all), the tenor of Ilene's version of the agreement was that her down payment entitled her to own a portion of the residence as her separate property.

Richard argues that from the outset, the couple agreed to own the property "jointly," which he contends was an agreement to own the residence as community property. He further insists that the alleged condition of his making all the payments, if believed, "should be treated as a condition subsequent to the parties' agreement that they would own the property equally."

Richard invites this Court to measure his credibility against that of his former spouse and seeks to draw our attention to her acts which may reflect a lack of candor and fairness. The fact finder, not this Court, is the judge of the credibility of the witnesses and the weight to be accorded their testimony. *Harrell v. Sunylan Co.,* 128 Tex. 460, 97 S.W.2d 686 (1936). From all of the evidence, the fact finder could have concluded that the parties did not agree that the house would be a part of the community estate. On the other hand, the court could reasonably have concluded to the contrary. In such a situation, it is basic to our system of jurisprudence that the reviewing court may not substitute its view of the facts for that of the fact finder. *Benoit v. Wilson,* 150 Tex. 273, 239 S.W.2d 792 (1951). Richard's point of error is overruled.

By his fifth point, Richard asserts that the district court erred in awarding his .9% undivided separate interest in the house because the court had no power to award the separate property of one spouse to the other. Richard relies, of course, upon *Eggemeyer v. Eggemeyer,* 554 S.W.2d 137 (Tex.1977). The Supreme Court in that opinion held that the trial court may not divest one spouse's fee interest in realty and award it to the other spouse. Even counsel for Ilene concedes that the district court erred in divesting Richard of that interest.

Ilene argues in support of the judgment that the error in divesting Richard of merely a .9% interest is harmless error. Fur-

thermore, she argues that to require her to maintain a tenancy in common with a .9% interest is economically unrealistic and impracticable.

 Although Ilene's position has practical appeal, *Eggemeyer* holds that a trial court has no authority to divest a fee interest of separate realty in order to award such to the other spouse, or, put another way, such action lies entirely outside the trial court's discretion. *See McLemore v. McLemore*, 641 S.W.2d 395 (Tex. App.1982, no writ). Furthermore, this Court cannot conclude that the divestiture was harmless error pursuant to Tex.R. Civ.P. 434 when it plainly caused the rendition of an improper judgment. Point of error five is sustained.

## THE IBM PAYMENT

Richard commenced employment with IBM on January 30, 1956, and as of the date of his marriage to Ilene on February 11, 1977, he had accrued twenty-one years (252 months) of service with the company. He retired in July of 1982, and, therefore, his period of service during his marriage to Ilene was sixty-five months. His total service with IBM was 317 months, of which 252 months, or seventy nine and one-half percent was before his marriage to Ilene.

Upon his retirement in July 1982, Richard received, in addition to his ordinary retirement, a "Special Payment" in the amount of $75,000.00 which was to be paid semi-monthly over a three-year-period.

The district court determined that the "Special Payment" was entirely community property, and divided it into two portions; that sum in the husband's possession at date of trial ($5,300.00), and that amount receivable over the remainder of the three year period ($43,751.40).

The district court awarded one-half of each portion to Richard and Ilene, therefore each party received:

| | |
|---|---|
| Payment in possession at date of trial | $ 2,650.00 |
| Future payments | $21,875.70 |

Richard insists that the district court erred in finding the payment was entirely community property because such was "a supplementary retirement benefit," as a matter of law, since it allegedly was "based upon Husband's prior service with, and contributions to the company." Accordingly, he urges that only that part of the benefit earned or accrued during the marriage, or 65/317 (twenty and one-half percent) is community. *Cearley v. Cearley*, 544 S.W.2d 661 (Tex.1976); *Taggart v. Taggart*, 552 S.W.2d 422 (Tex.1977). It follows, the argument continues, that the other seventy-nine and one-half percent interest is Richard's separate property. Richard argues alternatively that there is "insufficient evidence" to support the district court's finding that the payment was entirely community property.

 Richard suggests that the primary basis for the "Special Payment" was to specially compensate him for his prior service to the company. As a result, he would characterize the payment as but a form of a retirement benefit which was earned during the tenure of his employment with IBM. To qualify as a "retirement benefit" capable of being apportioned between his separate and the community estate, the payment must be an "earned property right which accrued by reason of years of service," *Busby v. Busby*, 457 S.W.2d 551 (Tex.1970); or must be a "form of deferred compensation which is earned during each month of service," *Cearley v. Cearley*, 544 S.W.2d 661, 665 (Tex.1976).

In his first point of error, Richard argues that there was "insufficient evidence" to support the court's finding that the payment is entirely community. To the contrary, this Court has concluded that the record, as a whole, reveals that there is sufficient evidence for the determination that the payment was not to compensate appellant for past services. As such, this defeats both Richard's insufficient evidence argument and also his "separate property as a matter of law" argument.

Paul Turner, personnel administration manager for the Austin IBM plant, testi-

fied that Richard had made significant contributions to the company in the past, but more recently he had not been so productive. In fact, he had been graded down from Facilities Manager to Senior Engineer. His most recent responsibilities had not supported his level, but based upon his past contributions, the company management did not think it appropriate to reduce his level further. His position would not be filled after his retirement. Had Richard refused to retire, he would not have received the "Special Payment." Richard had expressed a strong interest in a special package and it appeared to management that he would retire upon receiving an attractive offer. It is a fair conclusion from the evidence that Richard and IBM were bargaining for an incentive to permit him to retire early so that the company could terminate his unproductive position.

Turner testified further about the nature of the Special Payment. No such payments were made on an employee-wide scale. Such payments were "unique" and "strictly discretionary" and rarely given. A condition of the payments, although not the primary purpose, was that the employee not compete with IBM.

In discussing the Special Payment program at other IBM plant sites in the country, Turner stated:

> All of them have been associated with our desire to offer employees an opportunity to leave the company, if they choose, voluntarily, to help rebalance our manpower throughout the company.

■ The Special Payment program appears primarily to be an incentive to coax an employee into an early retirement. The fact that such payment is purely discretionary with the company negates the notion that it is earned or accrued over the employee's tenure. It should be noted, as well, that the company did not report this payment on the W–4P form which is the proper retirement withholding form. Although there is some evidence which bore upon appellant's past service, much more evidence supported the nature of the payment to be an incentive to obtain retirement of high-ranked, unproductive employees.

■ Ilene claims error in the judgment by three cross-points. She, however, made no complaint to the district court of any error in the judgment. The trial court should be afforded an opportunity to correct any errors that it might have made in the judgment. Accordingly, to complain of the judgment on appeal, an appellee is required to bring those errors to the court's attention in some manner whether by filing exceptions to the judgment, notice of appeal, or motion for new trial. *West Texas Utilities Co. v. Irvin*, 161 Tex. 5, 336 S.W.2d 609 (1960); *Saenz Motors v. Big H. Auto Auction, Inc.*, 653 S.W.2d 521, 526 (Tex.App.1983), aff'd, 665 S.W.2d 756 (Tex. 1984); State Bar of Texas Appellate Procedure in Texas § 15.16 (2d ed. 1979). The cross-points are overruled.

Because the district court erroneously divested Richard of his .9% separate interest in the house, the judgment of the district court is modified to provide that Richard is a co-tenant in the house to the extent of his separate .9% interest. In all other respects the judgment is affirmed.