**DELHI GAS PIPELINE CORPORATION,**
**Appellant,**

v.

**James L. LAMB, Jr., et al., Appellees.**

**No. 08–86–00007–CV.**

Court of Appeals of Texas,
El Paso.

Dec. 31, 1986.

Opinion on Rehearing Feb. 4, 1987.

Raymond R. Johnson, Sulphur Springs, for appellant.

Harris E. Kerr, Midland, for appellees.

Before OSBORN, C.J., and ARMENDARIZ and FULLER, JJ.

## OPINION

OSBORN, Chief Justice.

This suit was filed by working interest owners of mineral leaseholds in the Howard Draw Field in Crockett County to recover damages under four different contracts because of alleged failures of the gas purchaser to redetermine the price of gas every other year and to pay for gas under a take-or-pay provision. The trial court in a bench tried case awarded the plaintiffs $1,046,093.40 and prejudgment interest of $409,408.21, plus attorney's fees of $120,000.00 for both the trial and appeals. Plaintiffs filed a voluntary remittitur of $37,511.58 to correct a miscalculation.

By two points of error, the Appellant contends the trial court erred in granting judgment for deficiencies in the quantities of gas purchased and in granting judgment based upon a price redetermination. By two additional points, the Appellant complains of the award of attorney's fees. By two cross-points of error, the Appellees assert the trial court erred in calculating the proper redetermined prices for gas and in calculating prejudgment interest. We affirm in part and reverse and remand in part.

James L. Lamb, Jr. is the operator of the field in behalf of all plaintiffs. By three gas purchase agreements executed in 1973 and one in 1975, these working interest owners agreed to sell gas to Delhi Gas Pipeline Corporation. The first three contracts required Delhi to purchase 80% of each well's delivery capacity and under the fourth contract, 75% of delivery capacity. The contracts required that Delhi conduct tests four times a year to determine the Delivery Capacity of each well. By a letter agreement in April, 1976, Delhi agreed to redetermine the price of gas commencing March 1, 1976, to $1.425 per MCF under the three contracts executed in 1973, and the sellers in those contracts waived all claim for deficiencies in the purchase of gas, if any had occurred up to that date. From March 1, 1976, to February 28, 1982, Delhi purchased 3,051,148 MCF of gas from the field. No delivery tests were conducted in 1976 or 1977. Based upon production figures in 1978 and 1979, Lamb decided that Delhi had failed to either take or pay for the quantities of gas required under its contracts and this suit was filed in June, 1979.

Mr. Lamb testified initially that for the six years from 1976 to 1982, the total deficiencies for the field were 1,003,533 MCF of gas. He testified extensively as to problems with Delhi's gas lines, gas pressures in their intake line, and compressor operations, which he said resulted in either Delhi being unable to take gas from the field or resulted in the wells being unable to produce at their normal flow pressures. He said that by permitting pressure to build up in the intake lines and by having a compressor which was not operating, Delhi was

able to control gas production. He also indicated that at times Delhi had no market for all the gas it was required to take and that it took steps to delay or reduce production.

■ After all testimony was concluded in July, 1982, the trial court made certain rulings which required recalculations and adjustments under the force majeure clauses. At a subsequent hearing in September, 1985, Mr. Lamb presented his revised calculations based upon Delhi's deliverability test, the values of gas actually purchased as stipulated by the parties, a comparison of volumes produced, and line pressure according to daily volume and pressure reports prepared solely by Delhi. With that information, he determined the total deficiency was 640,158 MCF of gas. He also calculated certain volumes of gas that Delhi was to receive as a credit under the force majeure clauses based upon gas charts which reflected downtime in Delhi operations. These calculations resulted in a credit for eighty-four days of nonproduction whereby Delhi was relieved of its obligation to take gas under its contracts.

Delhi produced evidence contrary to that presented by Mr. Lamb. It calculated its total deficiencies at 68,136 MCF of gas. It further concluded that after giving effect to the force majeure provisions in its gas contracts, there were no deficiencies. Under a no evidence point of error "the appellate court must consider only the evidence and the inferences tending to support the finding and disregard all evidence and inferences to the contrary." *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965). And where findings of fact and conclusions of law are not requested, all questions of fact are presumed found in support of the judgment and the judgment will be affirmed if it can be upheld upon any legal theory that finds support in the evidence. *Lassiter v. Bliss*, 559 S.W.2d 353 (Tex.1977). We conclude that the testimony and exhibits which reflect the revised figures certainly support the trial court's judgment. Those calculations were arrived at by using reports prepared by Delhi. Point of Error No. One is overruled.

■ We now turn to the issue of price redetermination. With the rapid fluctuations in the price of gas since 1973, it has become a rather standard procedure to provide clauses in oil and gas purchase agreements which peg the price of a produce to other similar sales in the area. Delhi's contracts gave the sellers a right or option to cause the price to be paid for gas under the contracts to be redetermined every other year. A written request for a price redetermination had to be made sixty days prior to the beginning of every other contract year.

The record contains copies of the correspondence whereby written demand was timely made prior to the appropriate contract years for a price redetermination after the first two years. The letter agreement which the parties signed in April, 1976, did redetermine the price of gas for the two-year period commencing March 1, 1976. It also contained a waiver of any claim under the take-or-pay provision.

Following the timely request for redetermination commencing on March 1, 1978, Delhi wrote to Mr. Lamb agreeing to a price of $1.527 per MCF. The letter agreement contained a provision for waiving any claim under the take-or-pay provision for the prior two years. The proposal was not acceptable to Mr. Lamb. Following another request for redetermination two years later, Delhi agreed to a price of $1.796 per MCF commencing March 1, 1980. This proposal also contained a provision waiving any claim under the take-or-pay clause for the prior two years. Mr. Lamb did not accept the proposal. The request for redetermination beginning on March 1, 1982, received no reply. Similar requests and responses were made under the fourth contract, but on different dates because of the difference in the beginning of a contract year. Delhi had no contractual right to require a waiver of the take-or-pay provision as a condition to a price redetermination. Since no agreement was reached after 1976, Delhi paid the sellers under three contracts $1.425 per MCF throughout the period in dispute and paid the sellers under

the fourth contract $1.527 per MCF during the period in dispute.

At trial the parties stipulated that based upon the formula in the gas contracts the price per MCF was $2.0454 as of March 1, 1978; $2.1515 per MMBTU (Million British Thermal Units) as of July 1, 1979; $2.3622 per MMBTU as of March 1, 1980; $2.84 per MMBTU as of July 1, 1981; and $3.063 per MMBTU as of March 1, 1982, all subject to deductions for treating, compression and cleaning costs, if applicable. They also stipulated to the compressing, transporting and treating costs for each contract period.

In accordance with the provision of the contract for redetermination, the court took 92% of the stipulated prices for each contract period and then reduced that figure by the agreed treating and compressing costs to arrive at the correct redetermined price under each contract for each two-year period. The evidence clearly supports those calculations and the trial court's findings. In reaching this conclusion, we have again considered only the evidence and the inferences tending to support the trial court's findings and have disregarded all evidence and inferences to the contrary. *Garza v. Alviar, supra.* Point of Error No. Two is overruled.

Next, we consider the two points of error concerning the award of attorney's fees. Point of Error No. Three was made to attack the award of attorney's fees if Appellant were successful on the first two points, because if Appellant was not liable for monetary damages, it would not be liable for attorney's fees. Having overruled the first two points of error and permitted the Appellees to recover, we now overrule Point of Error No. Three.

■ The last point contends the fees awarded are excessive. The two attorneys who tried the case testified as to their time and charges in this case, and another disinterested attorney testified as to reasonable fees in this case. All of this evidence was related to work in the trial court. There was no proof as to reasonable attorney's fees for an appeal. Point of Error No. Four is sustained in part. That part of the judgment permitting a recovery of $22,-

500.00 subject to appeals to this Court and the Supreme Court of Texas is reversed and that part of the case is remanded for further development of the evidence on the issue of reasonable attorney's fees for the appellate proceedings.

■ The Appellees by one cross-point of error complain of the judgment which awarded 6% simple interest as prejudgment interest on sums which were not timely paid after proper calculations based upon price redetermination. Appellee relies upon the holding in *Cavnar v. Quality Control Parking, Inc.,* 696 S.W.2d 549 (Tex.1985), for its assertion that the trial court should have used a 10% compounded daily interest rate. Appellees also complain in their other cross-point of error that the trial court erred in calculating the proper redetermined prices due under the gas purchase agreements.

The Appellees did not except to the judgment of the trial court. They did not file a motion for new trial. On oral argument, counsel readily acknowledged that Appellees made no objection to the final judgment. This Court on motion for rehearing in *Dietz v. Dietz,* 540 S.W.2d 418 (Tex.Civ. App.—El Paso 1976, no writ), cited numerous cases holding that before an appellee may complain of a part of the trial court's judgment by · cross-points, such appellee must have excepted to the judgment, or in some manner apprised the trial court of any dissatisfaction with the judgment entered. The court specifically applied this rule to a complaint by an appellee about prejudgment interest in *McLemore v. Johnston,* 585 S.W.2d 347 (Tex.Civ.App.—Dallas 1979, no writ). In passing on this issue in *Whorrall v. Whorrall,* 691 S.W.2d 32 (Tex. App.—Austin 1985, writ dism'd), Chief Justice Shannon wrote:

Ilene claims error in the judgment by three cross-points. She, however, made no complaint to the district court of any error in the judgment. The trial court should be afforded an opportunity to correct any errors that it might have made in the judgment. Accordingly, to complain of the judgment on appeal, an appellee is required to bring those errors to

the court's attention in some manner whether by filing exceptions to the judgment, notice of appeal, or motion for new trial. *West Texas Utilities Co. v. Irvin,* 161 Tex. 5, 336 S.W.2d 609 (1960); *Saenz Motors v. Big H. Auto Auction, Inc.,* 653 S.W.2d 521, 526 (Tex.App.1983), aff'd, 665 S.W.2d 756 (Tex.1984); State Bar of Texas Appellate Procedure in Texas sec. 15.16 (2d ed. 1979). The cross-points are overruled.

The Appellees' two cross-points of error are overruled.

The judgment of the trial court is in all things affirmed, except that the award of attorney's fees is reduced to $97,500.00 and that part of the judgment awarding attorney's fees if an appeal was perfected is severed from the remaining issues in the case and in the interest of justice, that part of the case is remanded to the trial court for a further development of the evidence and judgment upon that issue alone.

ARMENDARIZ, J., not sitting.

Before OSBORN, C.J., and FULLER, J.

### OPINION ON MOTION FOR REHEARING

OSBORN, Chief Justice.

The Appellant, Delhi Gas Pipeline Corporation, has filed a motion for rehearing in which it again asserts the same basic contentions presented in its original brief. We have again considered those contentions and the points of error raised in the motion for rehearing and they are overruled.

The Appellees, James L. Lamb, Jr., et al., have filed a motion for rehearing along with two motions to supplement the record. We grant the motion to amend the record by filing a supplemental statement of facts and deny the motion to amend the transcript. In part we grant the motion for rehearing, and in part deny the motion.

■ The supplemental statement of facts which we have granted leave to file includes testimony heard by the trial court in August, 1986, concerning attorney's fees and in particular evidence concerning the

amount of time involved with an appeal in this case. That testimony was inadvertently left out of the statement of facts originally filed in this case. The trial court's award of attorney's fees on appeal was based upon the testimony which appears in this supplemental statement of facts. We find that evidence sufficient to support the trial court's award of $22,500.00 subject to appeals to this Court and the Supreme Court of Texas. That part of our judgment dated December 31, 1986, which reversed the trial court's judgment awarding attorney's fees on appeal is set aside and the trial court's award of attorney's fees is in all things affirmed.

The Appellees' motion for rehearing asserts that we erred in overruling the Appellees' two cross-points of error. It is argued that under Rule 52(a), Tex.R.App.P., the Appellees were not required to except to the trial court's judgment in order to complain on appeal with regard to the issues of prejudgment interest and the price redetermination provisions of the contracts. We disagree. The provisions now appearing in Rule 52(a), Tex.R.App.P., previously appeared in Rule 373, Texas Rules of Civil Procedure. It was under the provisions of that rule that the court in *Plasky v. Gulf Insurance Company,* 160 Tex. 612, 335 S.W.2d 581 (1960), was decided. In that opinion, Justice Walker noted that a complaint was made about the trial court's failure to award interest on a sum recovered in a personal injury suit over and above the policy limits of the defendant. In denying the contention, the court said:

> He did not object or except to the judgment entered in this case, and there is nothing in the record to show that the contention he now makes was ever urged in the trial court. The question cannot be raised for the first time on appeal, and petitioner's second point of error is accordingly overruled.

All of the cases cited in our original opinion reached that same result. The Appellees now attempt with a supplemental transcript to include in the record copies of correspondence between counsel and the court concerning these issues. The corre-

spondence is not a proper matter for inclusion in the transcript and we have accordingly denied the motion to have the supplemental transcript filed. Except as to the issue of attorney's fees on appeal, the Appellees' motion for rehearing is in all things overruled.