# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-08-00734-CV

---

**Michael Scott Giesler, Appellant**

**v.**

**Kelly Ann Giesler, Appellee**

---

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
### NO. D-1-FM-06-004964, HONORABLE SUZANNE COVINGTON, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

Michael Scott Giesler appeals from a final decree of divorce from Kelly Ann Giesler.[1] In nine issues, Michael challenges the district court's division of property, awards of child support, spousal maintenance, and attorney's fees, as well as the post-judgment interest rate that the court imposed on amounts awarded to Kelly. We will affirm in part, modify in part, and reverse and remand in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The Gieslers married on June 30, 1990. There were two children of the marriage, who were 15 and 12 when the divorce was granted. Prior to and during the marriage, Michael was employed by 3M Corporation in Austin, Texas. Kelly worked as an administrative assistant during

---

[1] Because the parties have the same surname, we will refer to them as "Michael" and "Kelly" for clarity.

the early part of the marriage, but was a stay-at-home mom for more than fourteen years until the parties separated. In 1992, the Gieslers purchased a house in Austin (the "family home"), using some of Michael's separate property as a part of the down payment.

By all accounts the marriage and family life were stressful and tumultuous. All four family members ended up in counseling. In September 2006, Kelly and the two children fled the family home alleging family violence by Michael. The Travis County Attorney's Office filed an application for protective order on behalf of Kelly and the two children, and Michael was removed from the family home as a result. Shortly thereafter, Michael filed a petition for divorce in the same proceeding. In response, Kelly filed a counter-petition asserting cruelty as ground for divorce and seeking sole managing conservatorship of the children, child support, a disproportionate share of the community estate, confirmation of separate property, reimbursement, spousal maintenance, damages for breach of fiduciary duty and fraud, a permanent injunction against Michael enjoining him from communicating, contacting, or coming within 200 yards of Kelly and the children, and attorney's fees.

Kelly was represented by an attorney throughout the divorce proceedings. Although initially represented by counsel, Michael proceeded pro se after his counsel withdrew in September 2007. During the pendency of the case, Michael sold community stock in violation of the district court's orders and used the proceeds to pay community bills, including attorney's fees, and to purchase a house (the "new home"), furnishings, and a car for his use.

At the conclusion of a six-day trial in February 2008, the district court orally rendered judgment granting the divorce and the protective order, naming Kelly sole managing

conservator of the children, and awarding Kelly much of the other relief she had requested. However, several months passed before a final decree was signed in September 2008, which was subsequently amended that November. In the interim, Michael obtained counsel again, and filed post-trial motions that were ultimately denied.

Regarding the property division, the district court found that Kelly should be awarded a disproportionate share of the community estate for reasons including Michael's fault in the break-up of the marriage, disparity in the parties' earning power, and "wasting of community assets" by Michael "in violation of the Court order."

The district court awarded Kelly, among other assets, the family home and its contents, one car, a lump sum of $460,000 from Michael's "3M Voluntary Investment Plan and General Employees Stock Purchase Plan defined contribution plans," 50 percent of "any and all remaining 3M stock options which existed by reason of [Michael's] past or present employment," and judgment of $99,000 to be secured by an owelty lien on the new home. Also as part of the property division, the district court ordered Michael to pay $15,000 in attorney's fees to Kelly's lawyer. Michael was awarded assets including the new home and its contents, the "remainder" of his "3M Voluntary Investment Plan and General Employees Stock Purchase Plan defined contribution plans," and two cars, including the car he had recently purchased. Michael asserts, relying on the district court's valuation of assets, that the property division awarded Kelly 89 percent of the community assets and him only 11 percent.

The district court further found that Michael should pay Kelly child support in excess of the statutory guidelines, and ordered him to pay such support in the amount of $2,700 per month.

3

The court also ordered Michael to pay Kelly another $2,500 per month for three years as post-divorce maintenance, plus pay Kelly's health insurance premiums for eighteen months as "additional post-divorce maintenance."

Michael appealed.

## ANALYSIS

In nine issues, Michael urges that the district court abused its discretion by (1) divesting him of separate property, (2) finding that he wasted community assets and making a disproportionate property division and money damages award based on that finding, (3) dividing the community property in a manner that was manifestly unfair, (4) ordering child support in excess of statutory guidelines, (5) failing to make sufficient findings of fact as to child support, (6) awarding spousal maintenance, (7) awarding attorney's fees, (8) imposing an erroneous post-judgment interest rate, and (9) not ordering the parties to amend their 2007 tax returns to change their filing status so as to obtain certain tax benefits.

**Standard of review**

We review the district court's judgment under an abuse-of-discretion standard. *See Rodriguez v. Rodriguez*, 860 S.W.2d 414, 415 (Tex. 1993) (child-support orders); *Murff v. Murff*, 615 S.W.2d 696, 686 (Tex. 1981) (division of property); *Hipolito v. Hipolito*, 200 S.W.3d 805, 806 (Tex. App.—Dallas 2006, pet. denied) (spousal maintenance). A trial court abuses its discretion if it acts arbitrarily, unreasonably, without regard to guiding legal principles, or without supporting evidence. *Bocquet v. Herring*, 972 S.W.2d 19, 21 (Tex. 1998). Here, the abuse-of-

discretion standard also incorporates the traditional evidentiary-sufficiency standards of review. Legal and factual insufficiency are not independent grounds of error but are relevant factors in our assessment of whether the district court abused its discretion. *Zeifman v. Michels*, 212 S.W.3d 582, 587 (Tex. App.—Austin 2006, pet. denied). That is, to determine whether there has been an abuse of discretion because the evidence is legally or factually insufficient to support the district court's decision, we engage in a two-pronged inquiry, determining whether (1) the district court had sufficient evidence upon which to exercise its discretion, and (2) the district court erred in its application of that discretion. *Id.* The applicable evidentiary-sufficiency review comes into play with regard to the first question. *Steele v. Steele*, No. 03-07-00011-CV, 2009 WL 2567911, at *3 (Tex. App.—Austin Aug. 19, 2009, no pet.) (mem. op.).

Evidence is legally insufficient (1) when there is a complete absence of a vital fact; (2) when rules of law or evidence preclude according weight to the only evidence offered to prove a vital fact; (3) when the evidence offered to prove a vital fact is no more than a scintilla; or (4) when the evidence conclusively establishes the opposite of the vital fact. *City of Keller v. Wilson*, 168 S.W.3d 802, 810, 815-16 (Tex. 2005). In determining the legal sufficiency of the evidence, we must consider evidence favorable to the finding if a reasonable factfinder could and disregard evidence contrary to the finding unless a reasonable factfinder could not. *Id.* at 827. We review the evidence in the light most favorable to the finding. *Diamond Shamrock Ref. Co., L.P. v. Hall*, 168 S.W.3d 164, 170 (Tex. 2005).

To determine whether the evidence is factually sufficient, we weigh and consider all the evidence in the record. *Zeifman*, 212 S.W.3d at 589-90. When an appellant attacks the

factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, the appellant must demonstrate the finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986) (per curiam). When an appellant attacks the factual sufficiency of an adverse finding on an issue for which he had the burden of proof, the appellant must demonstrate that the "adverse finding is against the great weight and preponderance of the evidence." *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 242 (Tex. 2001) (per curiam). We must not merely substitute our judgment for that of the trier of fact. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

**Property division**

We turn first to Michael's issues concerning the property division. A trial court in a divorce proceeding is charged with ordering a division of the community estate in a manner that the court deems "just and right," having due regard for the rights of each. Tex. Fam. Code Ann. § 7.001 (West 2006). Only community property, however, is subject to division; the district court cannot divest a spouse of separate property. *Jacobs v. Jacobs*, 687 S.W.2d 731, 733 (Tex. 1985). In dividing the community estate, the district court can consider several nonexclusive factors. *Murff*, 615 S.W.2d at 698-99. A district court is presumed to have properly exercised its discretion in dividing the marital assets. *Id.* at 699. If we determine that the district court abused its discretion in dividing the community estate or committed reversible error in determining what property is part of the community estate, we must reverse the entire community estate for a new division. *Jacobs*, 687 S.W.2d at 733.

6

We begin with Michael's second issue, in which he complains of the district court's finding that he wasted community assets and its adverse rulings predicated on that finding. Waste is one of the non-exclusive factors that a district court may consider in its "just and right" division of the community. *See Schlueter v. Schlueter*, 975 S.W.2d 584, 588 (Tex. 1998). Waste occurs when one spouse, dishonestly or purposefully with the intent to deceive, deprives the community estate of assets to the detriment of the other spouse. *Id.* at 589. The district court found that Michael had wasted community assets by selling those assets in violation of the court's orders and by using the proceeds to buy a car, house, and furnishings for himself. Based on that finding, the district court disproportionately divided the community estate in favor of Kelly. Also, as Kelly acknowledges on appeal, the $99,000 money judgment to Kelly was intended by the district court "to compensate her for Michael's waste of community assets." Michael asserts there is no evidence showing that his actions deprived the community of any assets—i.e., there was no waste—and that the district court, therefore, abused its discretion in disproportionately dividing the community estate and awarding a $99,000 judgment against him on that basis. We agree.

Michael testified that he used the proceeds from selling community assets to pay community bills, including attorney's fees for the divorce, to buy a new car, and to buy and furnish the new house. Kelly does not dispute, either at trial or on appeal, how or for what purpose Michael used the community funds. While Michael's actions may have been in violation of the district court's orders and may have been done without Kelly's knowledge, the evidence conclusively shows that Michael's actions either were done for community purposes or did not deplete the community assets—the net balance of the community remained the same because the community

debt was reduced and the community assets were simply transmuted, not lost. Thus, no waste occurred. *See, e.g.*, *In re Notash*, 118 S.W.3d 868, 873 (Tex. App.—Texarkana 2003, no pet.) (no waste because property was not transferred outside the community); *Connell v. Connell*, 889 S.W.2d 534, 543-44 (Tex. App.—San Antonio 1994, writ denied) (waste requires disposal of community assets for non-community purposes). In fact, the district court included the lowered debts and transmuted assets in its division of community property. We sustain Michael's second issue.

Our disposition of Michael's second issue requires us to reverse and remand the entire property division for reconsideration. *Jacobs*, 687 S.W.2d at 733. Because the district court will have the opportunity to revisit the property division on remand, we do not reach Michael's third issue, in which he urges that the current property division is manifestly unjust and an abuse of discretion. However, we note the Texas Supreme Court's observation that "[t]here is a difference between making a just and right division of the property," which is the proper focus of the property division, "and punishing an errant spouse," which is an abuse of discretion. *Young v. Young*, 609 S.W.2d 758, 762 (Tex. 1980).

Similarly, because the property division is being reversed and remanded, we do not reach Michael's seventh issue, in which he challenges the district court's award of attorney's fees as part of the property division; his ninth issue, in which he contends that the district court abused its discretion in declining to order the parties to amend their 2007 tax returns to yield certain benefits; and his eighth issue, in which he complains about the post-judgment interest rate.

The district court will also have the opportunity to remedy any aspects of the current property division that have the effect of awarding Michael's separate property to Kelly. In

his first issue, for example, Michael points out that the district court awarded Kelly a lump sum of $460,000 from his "3M Voluntary Investment Plan and General Employees Stock Purchase Plan defined contribution plans," and Michael "any remaining amounts." As of the date the district court signed the decree, the value of this account was $462,024.04, meaning that Michael's share was slightly over $2,000. On appeal, Kelly concedes that Michael had a separate-property interest of $28,489.66 in his "401k." Although the record is somewhat unclear as to whether this "401k" in which Michael has his separate-property interest is coextensive with the "3M Voluntary Investment Plan and General Employees Stock Purchase Plan defined contribution plans" divided in the decree,[2] to the extent that it is, we agree with Michael that the current decree would have the effect of awarding his separate property to Kelly.

Also in his first issue, Michael contends that the district court's award of all of the personal property contents in the family home had the effect of divesting him of separate property. Although the district court made no special findings regarding the character of this personal property, it necessarily found that it was community property because it awarded the contents of the family home to Kelly. *See Murff*, 615 S.W.2d at 699. The district court's judgment must be

---

[2] Michael and Kelly both refer to a "401k" in their appellate briefs, but Michael's expert seemed to indicate that Michael actually had three types of 3M retirement plans—a "401k," a Voluntary Investment Plan ("VIP"), and an Employee Stock Purchase Plan. The expert testified that Michael had a separate property interest of $28,489.66 in the VIP because that was the amount in that fund on the date the Gieslers were married. He also testified that Michael had approximately $48,000 in the 401k on the date of the Gieslers' marriage, but he was unable to trace those proceeds because the manner in which 3M handles its accounts prevented him from determining whether Michael had a separate property interest in the 401k. Kelly concedes on appeal that Michael has a separate property interest of $28,489.66 in his "401k." From context, it would appear that the parties' references to Michael's "401k" refer to the account the expert identified as the VIP.

affirmed if there is any evidence that supports this implied finding. *Id.* Therefore, we treat Michael's issue on appeal as a challenge to the sufficiency of the evidence supporting that finding. *See Tucker v. Tucker*, 908 S.W.2d 530, 532 (Tex. App.—San Antonio 1995, writ denied).

A spouse's separate estate consists of property owned by that spouse before marriage, property acquired during the marriage by the spouse by gift or inheritance, and recovery for personal injuries suffered by that spouse during the marriage, with the exception of lost earning capacity during the marriage. Tex. Fam. Code Ann. § 3.001 (West 2006). The Family Code, however, creates a statutory presumption that all property possessed by either spouse during or upon dissolution of the marriage is community property. *Id*. § 3.003(a). To overcome the community-property presumption, the spouse claiming an item as his separate property must establish that fact by clear and convincing evidence and must trace and clearly identify the property claimed. *Id.* § 3.003(b).

At trial, Michael testified as follows regarding his separate personal property located in the family home:

| | |
|---|---|
| THE COURT: | So your testimony would be that the list entitled Separate Property of Michael Scott Giesler, which is attached to your Proposed Disposition of Issues, that each and every item on that list, consisting of some 101 items, is your separate property? |
| MR. GIESLER: | That's correct. |
| THE COURT: | And that each item was obtained either as a gift or you owned it prior to the marriage? |
| MR. GIESLER: | Uh-huh. And— |

| THE COURT: | Or some of them are listed as "3M". What does that designation mean? |
|---|---|
| MR. GIESLER: | Office stuff that I have back at home that—it's 3M's property and I haven't been able to get back. |
| THE COURT: | All right, sir. Thank you. That's sufficient to get that into evidence. |

Kelly, who testified immediately after Michael, did not dispute Michael's testimony regarding the separate-property character of the personal property. To the contrary, she acknowledged that there were items in the family home that were Michael's separate property:

> Q:     Are you asking the Court to award you all the remaining furniture and furnishings that are in [the family] home, with the exception of some separate property that you agreed may be [Michael's]?
>
> A:     Right. And there may be some stuff in there that—I mean, I'm—I'm not trying to be unfair. There's stuff he can have.

Michael's testimony that a number of items in the house were his separate property was uncontroverted. The district court awarded all items in the house to Kelly. This had the effect, on this record, of awarding at least some of Michael's separate property to Kelly. This was error and subject to correction in the new property division.[3]

---

[3] In so holding, we do not depart from our holding in *Tschirhart v. Tschirhart*, 876 S.W.2d 507, 509 (Tex. App.—Austin 1994, no pet.) (unless party's proposed disposition of issues is formally admitted into evidence at trial, party may not rely on it as evidence on appeal). Here, Michael can rely on his testimony that the items listed in that disposition are his separate property. Further, the district court stated on the record that Michael's testimony was "sufficient to get that into evidence."

11

Michael further contends in his first issue that the district court improperly divested him of a separate-property interest in the family home. The district court found that Michael had a six-percent separate property interest in the family home, which it valued at $10,500, but that this interest was "dissipated by his misappropriation of insurance proceeds for the roof and floor repairs" to the family home "because said insurance proceeds were specifically designed to be used to make necessary repairs to said property and these wrongful actions . . . reduced the value of said property by at least that amount." The evidence shows that the Gieslers received insurance proceeds for damage to the family home, but that Michael used the proceeds to pay community expenses rather than make the needed repairs. However, there was no evidence presented regarding the effect of Michael's failure to make the repairs on the fair-market value of the home. Even if such evidence existed, however, his percentage interest could only be completely dissipated if the house had no value, which was not the case here. Consequently, the district court abused its discretion in awarding Michael's separate-property share in the family home to Kelly. *Cameron*, 641 S.W.2d at 219-20 (court cannot divest a spouse of title to separate property by awarding it to other spouse); *see also Whorrall v. Whorrall*, 691 S.W.2d 32, 37 (Tex. App.—Austin 1985, writ dism'd) (separate-property interest as small as 0.9% cannot be conveyed to other spouse).[4]

---

[4] Kelly argues that Michael is judicially estopped from asserting a separate property interest in the family home because, she asserts, he testified that he did not want to take the family home from Kelly, he did not want to force a sale, and that he was willing to swap the homes. "The doctrine of judicial estoppel 'precludes a party who successfully maintains a position in one proceeding from afterwards adopting a clearly inconsistent position in another proceeding.'" *Pleasant Glade Assembly of God v. Schubert*, 264 S.W.3d 1, 6 (Tex. 2008) (quoting 2 Roy W. McDonald & Elaine G. Carlson, *Texas Civil Practice* § 9.51 at 576 (2d ed. 2003)). Michael's alleged inconsistent statements regarding his separate-property interest, however, were made in this case, not in another proceeding; therefore, judicial estoppel does not apply. *See id.* at 8 (lower court actions in same case are part of same proceeding).

12

Michael also argues on appeal that the district court erred in finding that his separate-property interest in the family home was six percent rather than twelve percent. Michael's expert testified that Michael provided separate-property funds that equaled twelve percent of the purchase price of the family home and, therefore, Michael had a twelve-percent separate-property interest. It is well established, however, that when separate property is used to purchase real property during the marriage and title is taken in both spouses' names, a gift of half the interest is presumed. *See Cockerham v. Cockerham*, 527 S.W.2d 162, 168 (Tex. 1975). Although this presumption can be rebutted with clear evidence that no gift was intended, *see id.*, there is no evidence in the record regarding Michael's intent one way or the other; thus, the presumption stands. We hold that the district court was within its discretion in finding that Michael has a six-percent separate-property interest in the family home.

Michael also contends that the court miscalculated the dollar value of Michael's separate-property interest by applying his percentage interest to the equity of the house rather than

Kelly also argues that these same statements are quasi-admissions that conclusively establish that Michael has no separate-property interest in the home. As Kelly's brief acknowledges, in order for quasi-admissions to be treated as judicial admissions to preclude recovery, the declaration must be contrary to an essential fact embraced by the declarant's theory of recovery. *See Mendoza v. Fidelity and Guar. Ins. Underwriters, Inc.*, 606 S.W.2d 692, 694 (Tex. 1980). We have examined the record and determined that Michael's statements that he did not want to take the family home away from Kelly and the children and that he did not want to force a sale were made in the context of his proposing possible alternative property divisions. They are not contrary to his assertion of a separate-property interest in the family home. *See, e.g.*, *Harris County Flood Control Dist. v. Hambrick*, 433 S.W.2d 195, 200 (Tex. Civ. App.—Houston [1st Dist.] 1968, no writ) (testimony of landowner, to effect that he did not want drainage ditches on his property, but if they were installed he wanted them in a certain area, was not admission by landowner). We hold that the statements made by Michael were not contrary to his assertion of a separate-property interest in the family home.

13

to the fair market value of the house. We agree. Purchases made partly with separate property and partly with community funds are part separate and part community, each to the extent and in proportion to the consideration furnished. *Gleich v. Bongio*, 99 S.W.2d 881, 884 (Tex. 1937). The family home was purchased using separate-property funds as part of the down payment and by giving a note secured by a deed of trust on the property. The part of the property price supplied by the mortgage is community property; thus, the community's interest is the property interest that should be offset by the mortgage.

Finally, Michael contends that the district court's division of his 3M stock options had the effect of divesting him of separate property. The district court ordered a 50/50 split of "3M stock options which existed by reason of [Michael's] past or present employment." Michael contends that the district court erred in not applying the formula prescribed in former section 3.007(d)(2) of the Family Code, which provides that a spouse who is a participant in an employer-provided stock option plan has a separate-property interest in those options as follows:

> [I]f the option or stock was granted to the spouse during the marriage but required continued employment after marriage before the grant could be exercised or the restriction removed, the spouse's separate property interest is equal to the fraction of the option or restricted stock in which the numerator is the period from the date of dissolution or termination of the marriage until the date the grant could be exercised or the restriction removed and the denominator is the period from the date the option or stock was granted until the date the grant could be exercised or the restriction removed.

Act of May 24, 2005, 79th Leg., R.S., ch. 490, § 1, 2005 Tex. Gen. Laws 1353 (amended 2009) (current version at Tex. Fam. Code Ann. § 3.007(d)(2) (West 2009)) (hereinafter "former section 3.007(d)(2)"). Former section 3.007(d)(2) applies only if the options granted require

14

continued employment after the marriage. *See id.* There is no evidence in the record that some or all of the stock options were contingent upon Michael's continued employment. Michael's expert testified about various 3M stocks and stock options, but he could not identify any restrictions: "Well, I don't know what the—I don't have any documentation showing me what the restrictions are on the stock." To overcome the community-property presumption, Michael had to provide clear and convincing evidence of the stock's separate-property character, *see* Tex. Fam. Code Ann. § 3.003(b), which in this case is determined by former section 3.007(d)(2), *see* Act of May 24, 2005, 79th Leg., R.S., ch. 490, § 1, 2005 Tex. Gen. Laws 1353. Because there is nothing in the record showing that any stock options were contingent upon Michael's continued employment, and thus that they fall under former section 3.007(d)(2), we hold that it was within the district court's discretion to determine that the stocks were community property subject to division.

To the foregoing extent, we sustain Michael's first issue.

**Child support**

Michael's fourth issue challenges the district court's award of child support. Because this suit was filed before September 1, 2007, former section 154.126 governs the award of child support in this case. *See* Act of May 22, 2007, 80th Leg., R.S., ch. 620, § 7, 2007 Tex. Gen. Laws 1188, 1190.[5] Former section 154.126 provides:

---

[5] The 2007 amendments changed, among other things, the monthly net-resource amount from $6,000 to $7,500. *See* Tex. Fam. Code Ann. § 154.125 (West 2008).

15

(a)  If the obligor's net resources exceed $6,000 per month, the court shall presumptively apply the percentage guidelines to the first $6,000 of the obligor's net resources.  Without further reference to the percentage recommended by these guidelines, the court may order additional amounts of child support as appropriate, depending on the income of the parties and the proven needs of the child.

(b)  The proper calculation of a child support order that exceeds the presumptive amount established for the first $6,000 of the obligor's net resources requires that the entire amount of the presumptive award be subtracted from the proven total needs of the child. After the presumptive award is subtracted, the court shall allocate between the parties the responsibility to meet the additional needs of the child according to the circumstances of the parties.  However, in no event may the obligor be required to pay more child support than the greater of the presumptive amount or the amount equal to 100 percent of the proven needs of the child.

*See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 162-63 (current version at Tex. Fam. Code Ann. § 154.126 (West 2008)).  Michael does not dispute that his monthly income exceeds $6,000 and agrees that he should pay at least the guideline maximum, but he contends on appeal that the district court abused its discretion in awarding child support in excess of the presumptive guidelines because there was legally or factually insufficient evidence of the proven needs of the children to support such an award.

By law, an award in excess of the presumptive award must be based on the unmet needs of the children only.  *Rodriquez v. Rodriquez*, 860 S.W.2d 414, 417-18 (Tex. 1993).  The needs of the children, however, are not limited to "the bare necessities of life." *Id.* at 418.  The district court must determine, in its discretion, what the needs are on a case-by-case basis by following the "paramount guiding principle:  *the best interest of the child.*"  *Id.* (emphasis in original).  Kelly provided evidence regarding the needs of the children.  She testified about the children's extra-curricular activities, need for counseling, medical needs, and monthly expenses.  Her

16

conclusion was that she needed approximately $6,000 per month for both her and the children's expenses combined. Michael neither disputed her testimony nor offered any evidence to contradict Kelly's testimony despite the opportunity to do so. The district court found that Michael's income exceeded $6,000 per month and ordered child support of $2,700 per month, basing its award on (1) the ages and needs of the children, (2) the ability of the parents to contribute to their support, (3) the financial resources of Michael, (4) the amount of time of possession, and (5) the proven needs of the children. We conclude that the district court acted pursuant to guiding rules and principles, that there was sufficient evidence in the record to support its action, and that no abuse of discretion has been shown. We overrule Michael's fourth issue.[6]

In his fifth issue, Michael contends that the district court's failure to enter findings of fact in support of its child-support award is reversible error. The family code requires a district court to file appropriate findings of fact and conclusions of law when requested or when the child-support award varies from the percentage guidelines. Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 163-64 (current version at Tex. Fam. Code Ann. § 154.130 (West 2008)) (hereinafter "former section 154.130"). At trial, Michael requested findings of fact and conclusions of law from the district court, but the district court's findings and conclusions did not contain the information required by former section 154.130(b). *See id*. Michael requested additional findings of fact and conclusions of law, but the district court denied his request.

---

[6] Michael also complained that the child-support order failed to reduce the child support when the Gieslers' oldest child reached age eighteen. The parties have informed us that, during the pendency of this appeal, the district court has modified the child-support order to include a reduction in child support when the Gieslers' oldest child reaches age eighteen, thus obviating Michael's complaint.

When findings of fact and conclusions of law have been properly requested, a trial court's failure to file them is presumed reversible unless the record shows that the requesting party was not harmed by their absence. *See Tenery v. Tenery*, 932 S.W.2d 29, 30 (Tex. 1996). We conclude that Michael was not harmed by the district court's failure to file findings of fact that were in compliance with former section 154.130 because the information provided in complete findings of fact is not relevant to his issue on appeal that the evidence does not include information regarding the proven needs of the children. The findings of fact required by former section 154.130 do not address the proven needs of the children. *See* Act of April 6, 1995, 74th Leg., R.S., ch. 20, § 1, 1995 Tex. Gen. Laws 113, 162-63; *see also Yarbrough v. Yarbrough*, 151 S.W.3d 687, 692 (Tex. App.—Waco 2004, no pet.) (former section 154.130 does not apply to child support ordered in excess of guidelines). Accordingly, any error by the district court in issuing incomplete findings of fact was harmless. We overrule Michael's sixth issue.

**Spousal maintenance**

Finally, in his sixth issue, Michael challenges the district court's award of spousal maintenance. In three sub-issues Michael contends that (1) Kelly did not overcome the statutory presumption against spousal maintenance; (2) she failed to present legally or factually sufficient evidence that she lacks sufficient earning ability to meet her minimum reasonable needs; and (3) the duration of the spousal maintenance was not limited to the "shortest reasonable period."

The purpose of spousal maintenance is to provide temporary and rehabilitative support for a spouse whose ability to support herself has eroded over time while engaged in homemaking activities and whose capital assets are insufficient to provide support. *O'Carolan*

18

*v. Hopper*, 71 S.W.3d 529, 533 (Tex. App.—Austin 2002, no pet.). The trial court may, in its discretion, award spousal maintenance only if the party seeking maintenance meets specific eligibility requirements. *See* Tex. Fam. Code Ann. § 8.051 (West 2006). When divorce is sought in a marriage lasting ten years or more, a spouse may request spousal maintenance if she lacks sufficient property to meet her minimum reasonable needs and cannot support herself due to insufficient earning ability. *Id.* She must also overcome the statutory presumption that spousal maintenance "is not warranted unless the spouse seeking maintenance has exercised diligence in: (1) seeking suitable employment; or (2) developing the necessary skills to become self-supporting during a period of separation and during the time the suit for dissolution of the marriage is pending." *Id.* § 8.053(a). If the court awards spousal maintenance, it must limit the duration to the shortest reasonable period that allows the spouse seeking maintenance to meet the spouse's minimum reasonable needs by obtaining appropriate employment or developing an appropriate skill. *Id.* § 8.054. We review the district court's decision to award spousal maintenance under an abuse-of-discretion standard. *Hipolito*, 200 S.W.3d at 806.

The record reveals that Kelly had a high school education and that she had worked as an administrative assistant during the first part of the marriage. For the last fourteen years of the Gieslers' eighteen-year marriage, Kelly stayed at home to care for their children. During the pendency of the divorce, Kelly had sole care of the children and worked part-time at a grocery store making a little over $10 per hour, or approximately $1,000 per month. She testified that she did not believe that she would be able to secure a better job with her current job skills and she would need to, and intended to, go back to school and get additional training or education to become more

"employable." She testified that the divorce proceedings, court-ordered classes, and the children's illnesses prevented her from working full time or getting a different job, but that she worked as many hours as she was available. Based on this evidence, we cannot say that the district court abused its discretion in finding that Kelly had overcome the statutory presumption against spousal support.

In addition, Kelly testified about her needs and the needs of the children and concluded that she required approximately $6,000 per month to meet their needs. There was also evidence regarding the mortgage payments on the family house and other community debts. The Family Code does not define "minimum reasonable needs," and there are no cases defining the term. *See Cooper v. Cooper*, 176 S.W.3d 62, 64 (Tex. App.—Houston [1st Dist.] 2004, no pet.). "[D]etermining what the minimum reasonable needs are for a particular individual is a fact-specific determination that should be made by the trial court on a case-by-case basis." *Id.*; *see also Amos v. Amos*, 79 S.W.3d 747, 750 (Tex. App.—Corpus Christi 2002, no pet.) (evidence of minimal reasonable needs included wife's abilities, education, mortgage concerns, and business opportunities). The child support payments, her monthly income, and the spousal maintenance payment as awarded would total approximately $6,000. For all the reasons stated above, we find there is legally and factually sufficient evidence from which the district court could determine Kelly's minimum reasonable needs, that she lacked the earning capacity in the labor market to meet her minimum reasonable needs, and that it would take her at least three years to be able to meet her minimum reasonable needs. We overrule this part of Michael's sixth issue.

Finally, Michael contends that the district court erred in awarding Kelly spousal maintenance in excess of the statutory maximum of $2,500 per month. *See* Tex. Fam. Code Ann.

20

§ 8.055 (West 2006). The district court ordered Michael to pay $2,500 per month in spousal support for three years and it also ordered him to pay, "as additional post-divorce maintenance," Kelly's insurance premiums for eighteen months.[7] The amount of spousal support awarded by the district court exceeds the statutory maximum for eighteen months and, to the extent it did so, it was an abuse of discretion by the district court. To this extent, we sustain Michael's sixth issue.

## CONCLUSION

For the reasons we have explained above, we sustain Michael's second issue and, in part, his first issue, and reverse and remand the property-division portion of the decree for further proceedings consistent with our opinion. We overrule Michael's fourth and fifth issues challenging the child-support award. Finally, we sustain Michael's sixth issue with regard to the award of "additional post-divorce maintenance," modify the decree to strike the award of "additional post-divorce maintenance," and, as modified, affirm the district court's award of spousal maintenance.

_____

Bob Pemberton, Justice

Before Chief Justice Jones, Justices Pemberton and Waldrop

Affirmed in part; Modified and, as Modified, Affirmed in part; Reversed and Remanded in part

Filed: June 10, 2010

_____

[7] Kelly asserts on appeal that the district court's order to pay her insurance premiums for eighteen months should be considered a division of the community property. This, however, conflicts with the express language used by the district court in the divorce decree.